David M. **FRANTZ** and Leanne Frantz, Plaintiffs,

v.

**BRUNSWICK CORPORATION; Teleflex, Inc.; Ayer Sport Center, Defendants.**

No. CV 92–0439–AH–S.

United States District Court, S.D. Alabama, Southern Division.

Feb. 18, 1994.

David Scott Wright, Brown Hudgens, P.C., Mobile, AL, for Ayer Sports Center.

Joseph P.H. Babington, Helmsing, Lyons, Sims & Leach, P.C., Mobile, AL. J. Scott Kirk, Rumberger, Kirk & Caldwell, P.A., Orlando, FL, for Brunswick Corp.

Michael A. Worel, Cunningham Bounds, Vance, Crowder & Brown, David G. Wirtes, Gregory B. Breedlove, Mobile, AL, for David M. Frantz.

Michael D. Knight, Hand, Arendall, Bedsole, Greaves & Johnson, Mobile, AL, Francis P. Manchisi, Wilson Elser, Moskowitz, Edelman & Dicker, New York City, for Teleflex, Inc.

### ORDER

HAND, Senior District Judge.

This matter is before the court on Motions to Strike and Motions for Summary Judgment filed by Defendants. For the reasons that follow, and as summarized in the Conclusion of this Order, these motions are **GRANTED** in part and **DENIED** in part.

Plaintiff David M. Frantz became permanently and totally disabled as a result of a boating incident on April 7, 1991. Plaintiff's boat was manufactured by Marine Group, Inc. (acquired by defendant Brunswick Corporation in 1988), included a steering system manufactured by defendant Teleflex, Inc., and was sold to a dealer in Georgia. Defendant Ayer Sport Center purchased the boat from the Georgia dealer, installed an outboard motor, and sold the boat to a customer. This customer resold the boat to a second person, who in turn sold the boat to Plaintiff Frantz.

The accident, which took place on a navigable portion of the Alabama River, came about when a dip net blew up from the front of the Frantz's boat into Mr. Frantz's face. As an immediate "reflex action" to catch the net and/or to protect his face, Mr. Frantz took both hands off the steering wheel. The boat then turned to the right, and Mr. Frantz was thrown left.

Plaintiff, in operating his boat, felt pressure on the wheel caused by feedback into the steering system due to torque. Due to his experience with this and other power boats, he knew that boats tend to move to the right. Further, he knew not to take his hands off the steering wheel, although there is no evidence presented to suggest that he knew the full range of consequences of doing so.

Plaintiff was given, and read, a copy of a manual supplied with the boat and produced by the manufacturer of the outboard motor.

Plaintiff's complaint as amended lists eight causes of action, four causes under the general maritime law and four causes under Alabama tort law. Causes one through three are claims under the general maritime law for negligence, wantonness, products liability

respectively. Causes five through seven are the same claims but under Alabama law "to the extent not conflicted or superseded by general maritime substantive law." Cause four and cause eight are claims under general maritime law and Alabama law respectively by Plaintiff Leanne Frantz, wife of Plaintiff David M. Frantz, for loss of services, companionship, and consortium. All parties agree generally that admiralty jurisdiction exists and that this case should be tried under the principles of the federal maritime law, but the parties disagree on what these principles are and whether these principles can coexist with Alabama tort law principles.

## I. Defendants' Motions to Strike

The Defendants have filed motions to strike Plaintiff's Fourth through Eighth causes of action, claims for punitive damages, claims for other non-pecuniary damages, and claims of a right to jury trial.

### A. State law claims parallel to maritime law claims

Admiralty questions are generally decided under the substantive general maritime law of the United States,[1] which is "drawn from state and federal sources ... an amalgam of traditional common law rules, modifications of those rules, and newly created rules."[2] Use of federal law does not preempt all state law. In the field of maritime law, the Supreme Court has recognized state created liens, state remedies for wrongful death, state statutes for survival of actions, state rules for the partition and sale of ships, state laws governing specific performance of arbitration agreements, and state laws regulating the effect of breach of warranty.[3] These were recognized as valid even when they conflicted with the federal mari-

time law, so long as the maritime law does not require uniformity.[4] What this suggests is a balancing approach, as proposed in *Steelmet, Inc. v. Caribe Towing Corp.*[5]:

> One must identify the state law involved and determine whether there is an admiralty principle with which the state law conflicts, and if there is no such admiralty principle, consideration must be given to whether such an admiralty rule should be fashioned. If none is to be fashioned, the state rule should be followed. If there is an admiralty-state law conflict, the comparative interests must be considered— they may be such that admiralty may prevail ... or if the policy underlying the admiralty rule is not strong and the effect on admiralty is minimal, the state law may be given effect ...

There are three primary interests in giving effect to federal maritime law: the promotion of uniformity, the protection of statutorily or judicially created federal rights, and, less significant, the traditional inclination to allow plaintiffs to prevail in personal injury or wrongful-death maritime tort claims.[6] The primary interest in giving effect to state law is the state's interest in being permitted to regulate independently matters of local concern without interference by the federal government and in having state-created rights and obligations protected and enforced in actions in federal court.[7]

To the Court of Appeals for the Eleventh Circuit, as it has applied the *Steelmet* test, the question seems to be whether giving effect to state law would significantly affect substantive admiralty law. Generally, federal law should apply if the case presents a maritime problem and diversity of state law "would seriously interfere with the efficient

---

1. *Brockington v. Certified Elec., Inc.*, 903 F.2d 1523, 1529 (11th Cir.1990), *cert. denied* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991).

2. *East River Steam Ship Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 864–65, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986).

3. *Romero v. Intl. Terminal Operating Co.*, 358 U.S. 354, 373–74, 79 S.Ct. 468, 480–81, 3 L.Ed.2d 368 (1959).

4. *Id.*

5. 779 F.2d 1485, 1488 (11th Cir.1986) (citations omitted).

6. *Brockington* at 1530.

7. *Id.*

operation of the business."[8] In *Steelmet*, the Eleventh Circuit held that there was no strong admiralty interest in preventing direct action lawsuits under state law against insurance companies.[9] The *Steelmet* court noted that the insurer's interest in preventing direct action lawsuits was common to all insurers and was not at all particular to maritime insurers.[10] In *Brockington*[11] the Court applied the *Steelmet* test to allow state worker's compensation laws to preclude a shipworker's suit under the general maritime laws because there was no uniform general maritime rule to be affected governing worker's compensation's effect on lawsuits, and because the state had a strong interest in regulating its workforce's relationship with its employers.

■ Alabama tort law clearly conflicts with general maritime tort law on a number of matters. As discussed below[12], AEMLD differs from 402A in requiring proof of fault. Alabama recognizes the defense of contributory negligence[13] while maritime law recognizes the defense of comparative negligence[14]. Damages for willful and wanton misconduct are generally allowed in Alabama[15], but are allowed under the general maritime law in very limited circumstances.[16]

There is little evidence that the policies behind the general maritime rules are not strong. Plaintiffs are alleging that not only their boat was poorly built, but that all boats of the style were poorly built. Such allegations have national implications for the boatbuilding industry. Plaintiffs argue that Alabama has an even stronger interest in protecting the rights of its citizens to recover, particularly for accidents occurring within Alabama waters, but this interest is general and would significantly disrupt tort rules established under the maritime common law.[17]

■ Generally, state substantive remedies must conform to governing federal maritime standards.[18] Because there are significant conflicts between the general maritime and Alabama tort laws, and the policies behind the application of general maritime laws outweigh the policies behind the application of Alabama tort laws, this Court concludes that Plaintiffs cannot maintain separate causes of action under both Alabama and the general maritime law.[19] Therefore the Court **STRIKES** Plaintiff's Fifth, Sixth, Seventh, and Eighth Causes of Action.

## B. Claims for Punitive Damages under the General Maritime Law

■ The question of whether punitive damages are allowed under the general maritime law depends on this Court's reading of *Miles v. Apex Marine Corp.*[20] Before Miles, punitive and nonpecuniary damages were allowed under the general maritime law where

---

8. Stolz, "Pleasure Boating & Admiralty: Erie at Sea," 51 Calif.L.Rev. 661, 704 (1963).

9. *Steelmet* at 1490.

10. *Id.*

11. *Supra* note 1 at 1532.

12. See page 535.

13. *Williams v. Delta Intl. Machinery Corp.*, 619 So.2d 1330, 1332 (Ala.1993).

14. *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411, 95 S.Ct. 1708, 1715, 44 L.Ed.2d 251 (1975).

15. *Henderson v. Alabama Power*, 627 So.2d 878 (Ala.1993).

16. See pages 531–32.

17. In the dissent to *Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 685, 102 S.Ct. 2654, 2663, 73 L.Ed.2d 300 (1982), four United States Supreme Court justices, including Justice Rehnquist and Justice O'Connor, indicated that this case ought not to be in admiralty at all: "[T]he law of pleasure boating will develop faster and more rationally if the creative capabilities of the state courts and legislatures are freed of the imaginary federal concern with anything that floats on navigable waters." (J. Powell, dissenting). *Foremost's* majority opinion still controls, so this dissenting argument holds little water.

18. *Offshore Logistics Inc. v. Tallentire*, 477 U.S. 207, 223, 106 S.Ct. 2485, 2494, 91 L.Ed.2d 174 (1986).

19. *See Calhoun v. Yamaha Motor Corp.*, 1993 W.L. 216238, *7 (E.D.Pa.1993).

20. 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).

not specifically preempted by statute.[21] Defendants argue that after *Miles*, punitive and nonpecuniary damages are not allowed under the general maritime law.

In *Miles*, the Supreme Court held that loss of society and lost future earnings were not recoverable damages for the wrongful death of a seaman, whether under the Death of the High Seas Act[22] (DOHSA), the Jones Act[23], or general maritime law.[24] The Court concluded that DOHSA limited recovery for wrongful death on the high seas to "pecuniary loss,"[25] and that the Jones Act was "intended to incorporate the pecuniary limitation on damages as well," and further that these pecuniary damages did not include lost future earnings.[26] When Congress has spoken on what damages were recoverable, the Court concluded, "We sail in occupied waters. Maritime tort law is now dominated by federal statute, and we are not free to expand remedies at will simply because it might work to the benefit of seamen and those dependent upon them. Congress has placed limits on recovery in survival actions that we cannot exceed."[27]

Plaintiffs argue that *Miles* does not eliminate all non-pecuniary damages from the general maritime law. This argument is as follows: *Miles*, as discussed in the preceding paragraph, was a decision based on judicial deference to legislative intent. Neither the Jones Act nor DOHSA apply to the facts of this case, because Plaintiff is not a seaman nor did he die on the high seas. Therefore, there is no statute indicating which damages Congress intends for the Plaintiff to recover, and therefore no need for judicial deference to the legislature. As other Courts have concluded, *Miles* does not generally bar nonpecuniary damages under the general maritime law.[28]

However, this Court finds Plaintiffs' reading of *Miles* to be too narrow. *Gaudet*[29], the leading case pre-*Miles* allowing recovery of nonpecuniary damages under the general maritime law,[30] was limited by *Miles* only to longshoremen in territorial waters.[31] While not explicitly overruled[32], *Gaudet* has been so limited as to not provide the basis of awarding punitive damages in this case. Rather this Court finds persuasive the reasoning of *Wahlstrom v. Kawasaki Heavy Industries, Ltd.,*[33] and holds that punitive damages are generally unavailable in general maritime law post-Miles.

For these reasons, the Court **STRIKES** Plaintiffs' claims for punitive damages, and **STRIKES** Plaintiffs' Second Cause of Action for wantonness under the general maritime law, since it is this theory that would result in an award of punitive damages.

### C. Claims for other nonpecuniary damages under Maritime Law.

■ Plaintiff's fourth cause of action is a claim for loss of society under the general maritime law. No claim for loss of society is

**21.** *See Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 584, 94 S.Ct. 806, 814, 39 L.Ed.2d 9 (1974), *Complaint of Merry Shipping Inc.*, 650 F.2d 622 (5th Cir.1981), A. Adams, *Note, Elimination of Loss of Society Damages in General Maritime Law: Cater v. Placid Oil Co.*, 16 Mar. Law 377, 379 (Spring 1992).

**22.** 42 U.S.C. § 761 et seq.

**23.** 46 U.S.C.App. § 688, also known as Merchant Marine Act, 1920.

**24.** *Miles*, 498 U.S. at 32, 111 S.Ct. at 326.

**25.** *Id.* at 31, 111 S.Ct. at 325.

**26.** *Id.* at 31, 36, 111 S.Ct. at 325, 328.

**27.** *Id.* at 36, 111 S.Ct. at 327–28.

**28.** *See, e.g., CEH Inc. v. FV "Seafarer"*, 148 F.R.D. 469, 473 (D.R.I.1993) (allowing Plaintiffs to maintain a claim for wantonness that could result in punitive damages).

**29.** Since *Gaudet* involved neither a seaman nor the high seas, neither the Jones Act nor DOHSA was implicated.

**30.** *Gaudet*, 414 U.S. at 584, 94 S.Ct. at 814.

**31.** *Miles*, 498 U.S. at 31, 111 S.Ct. at 325.

**32.** *But see* Adams, *supra* note 21 at 387–388. ("*Gaudet* ... will likely be explicitly overruled in the name of uniformity when a case on point reaches the Supreme Court ... The goal of uniformity under judicially created maritime law demands that loss of society damages be denied across the board.")

**33.** 4 F.3d 1084, 1092–1094 (2d Cir.1993).

allowed under the general maritime law [34], so Plaintiff's fourth cause of action is **STRICK-EN**.

## II. Motion for Summary Judgment on Counts One and Three

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[35]

"A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is 'material' if it might affect the outcome of the suit under the governing substantive law."[36]

The basic issue before the Court on a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.[37] "[T]he moving party has the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodge[s]", and all factual inferences arising from it, must be viewed in the light most favorable to the nonmoving party.[38] Where the nonmoving party, as here, bears the burden of proof at trial, the burden on the moving party may be discharged by 'showing'—that is, by pointing out to the District Court—that there is an absence of evidence to support the nonmoving party's case.[39]

Once the movant satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with specific facts showing that there is a genuine issue for trial."[40] Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."[41] "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party".[42] "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."[43] The moving party is likewise entitled to judgment as a matter of law when the nonmoving party fails to show sufficiently an essential element of the case as to which the nonmoving party has the burden of proof.[44]

For the purposes of discussion, the Court will divide these causes of action into the following:

1) Claims based on design and manufacturing defects in strict products liability and negligence against Teleflex and Brunswick.

**34.** *Lollie v. Brown Marine Service, Inc.,* 995 F.2d 1565 (11th Cir.1993).

**35.** Fed.R.Civ.P. 56(c).

**36.** *Beck v. Somerset Technologies, Inc.,* 882 F.2d 993, 996 (5th Cir.1989) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

**37.** Anderson, *supra* note 36, 477 U.S. at 251–252, 106 S.Ct. at 2511–2512.

**38.** *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989).

**39.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

**40.** *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (*quoting* Fed. R.Civ.P. 56(e)) (emphasis removed) (internal quotation marks omitted).

**41.** *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The shifting burden from movant to nonmovant at summary judgment described above applies regardless of which party will bear the burden of proof at trial. *Id.* at 607.

**42.** *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir.1990).

**43.** *Matsushita, supra,* 475 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

**44.** *Peppers, supra,* 887 F.2d at 1497; *Manor Healthcare Corp. v. Lomelo,* 929 F.2d 633, 636 (11th Cir.1991).

2) Claims based on warning defects in strict products liability and negligence against Teleflex and Brunswick.

3) Claims based on design, manufacturing, and warning defects in strict products liability against Ayer.

## A. Design and Manufacturing Defects

Defendants' principal arguments to defeat design and manufacturing defect causes are that 1) the defect was open and obvious and 2) they had no duty to invent a better alternative when they complied with industry and governmental standards.

### 1. Open and Obvious Defects

■■■ In some jurisdictions, the patent danger rule, or the open and obvious danger rule, forbids recovery for a defect that is "open or obvious or one with respect to which the purchaser was adequately informed."[45] A patent danger does not preclude recovery under Restatement 2d of Torts § 402A comment i, but it is a factor in determining whether the product is "defective" or an element of comparative negligence.[46] What makes a product's danger "patent" is unclear; this Court looks to the defense of "assumption of risk" for guidance.[47] Most explanations of the assumption of risk doctrine limit plaintiff's recovery only when plaintiff is "aware of the facts which create the danger" and further "appreciate(s)

the danger itself and the nature, character, and extent which make it unreasonable."[48] Similarly, this Court holds that the patent danger rule can apply only when plaintiff knows not only that his conduct involves a risk, but also the extent of this risk. Defendants have not sufficiently shown that plaintiff knew the extent of the risk.

### 2. "Duty to Invent"

■■■ In many jurisdictions, a plaintiff can win a design defect products liability cause of action only if he proves that a ". . . safer, practical, alternative design was available to the manufacturer at the time it manufactured the [product]."[49] Proof of "state of the art" may be offered by either party as to this issue.[50] However, showing the "technical feasibility of a safe design" is insufficient; rather, the Plaintiff must show that the alternative design could be adapted to the existing market.[51] If such an alternative design is proven, compliance with industry standards is not, and should not be, a complete defense to a products liability cause; it may indicate a failure on the part of an entire industry.[52]

The Court finds that there are sufficient questions of fact to preclude summary judgment on this issue.

## B. Warning Defects

■■■ Defendants' principal arguments to defeat warning defect claims are that 1)

---

**45.** Prosser and Keeton, *The Law of Torts* § 698 (5th ed. 1984). *See also Elliott v. Brunswick*, 903 F.2d 1505, 1507 (11th Cir.1990) (A court need not let the jury assess Plaintiff's allegations of defects if the plaintiff "contemplated" the nature of the defect at the time of the accident.

**46.** *Mosher v. Speedstar Div. of AMCA Intern.*, 979 F.2d 823, 825 (11th Cir.1992)

**47.** Of course, "patent danger" is based on an objective standard while "assumption of the risk" is based on a subjective standard. *See Weatherby v. Honda Motor Company, Ltd.*, 195 Ga.App. 169, 393 S.E.2d 64, 66 (1990)

**48.** Restatement 2d of Torts § 496D.

**49.** *Elliott, supra* note 45 at 1507, citing *General Motors Corp. v. Edwards*, 482 So.2d 1176, 1191 (Ala.1985). Other jurisdictions, however, have held that a products liability plaintiff under 402A need not prove a "feasible alternative." *See, e.g.,*

*Larry D. Hudson, LDH, Inc. v. Townsend Associates*, 704 F.Supp. 207, 211 (D.Kansas 1988). Further, other jurisdictions have held that compliance with "state of the art" is not an absolute defense to a strict products liability cause of action. *See O'Banion v. Owens–Corning Fiberglass*, 968 F.2d 1011, 1016 (10th Cir.1992), *Reed v. Tiffin Motor Homes*, 697 F.2d 1192, 1198 (4th Cir.1982).

**50.** *See Products Liabilities of Shipbuilders and Repairers*, 62 Tul.L.Rev. 465, 481–82 (1988). Some jurisdictions, however, hold that evidence of state of the art is not admissible. *See Santiago v. Johnson Machine Corp.*, 834 F.2d 84, 85 (3d Cir.1987); *In Re Hawaii Federal Asbestos Cases*, 699 F.Supp. 233 (D.Hawaii 1988).

**51.** *Elliott, supra* note 45 at 1509–10.

**52.** *Elliott, supra* note 45 at 1508, citing *The T.J. Hooper*, 60 F.2d 737, 740 (2d Cir.1932).

plaintiff's action was reflexive, 2) (for Teledyne) any duty to warn was fulfilled through the warnings given to Brunswick, 3) the defect, if any, was open and obvious. As discussed above, the Court will let the jury decide whether the risks involved were truly open and obvious.

### 1. Reflex Actions

Brunswick cites two cases decided according to Pennsylvania law [53] for the proposition that a manufacturer is not liable for failure to warn when the plaintiff's action was primarily a reflex. Both cases clearly say that liability does not exist unless Plaintiff can show that a warning could have been heeded to avoid the peril.[54] This is simply a matter of proximate causation, and there are sufficient questions of fact to leave this question to the jury.

### 2. Third-party warnings

 A manufacturer who supplies a product through another party still has the duty to "exercise reasonable care to inform (the user) of (the product's) dangerous condition or of the facts which make it likely to be dangerous."[55] Whether warning the third-party and not the end-user is reasonable depends on the degree of or propensity for danger that the product poses; the unreasonableness of requiring the manufacturer to choose some other method of warning; and the reliability of the third party to convey the warning to the ultimate user.[56] There are sufficient questions of fact to leave this issue to the jury.

### C. Claims against Ayer

Defendant Ayer has moved for summary judgment (Doc. 157) on all causes of action.

Plaintiffs concede that summary judgment should be granted in Ayer's favor on its claims of negligence.[57] Therefore, the Court **GRANTS** summary judgment to defendant Ayer on count one (maritime negligence). Plaintiffs contest summary judgment on the strict products liability cause of action, however.

 The Supreme Court has recognized that products liability, including strict liability, is part of the general maritime law.[58] However, Alabama's version of products liability, AEMLD, differs from general maritime's version of products liability, Restatement of Torts 2d 402A, in that AEMLD is not a "no fault" doctrine.[59] Clearly, there is a conflict between 402A and AEMLD. Defendants cite to *Elliott v. Brunswick Corp.*[60] for the proposition that the 11th Circuit has applied AEMLD to products liability causes involving boats in Alabama, but there is no indication in *Elliott* that the either party alleged that federal maritime law should govern. Therefore, this court finds *Elliott* inapplicable. Further, this court concludes that the conflict between general maritime law's 402A and Alabama's AEMLD must be resolved in favor of the general maritime law's 402A, as there is no indication that the policies behind 402A are weaker than the policies behind Alabama's AEMLD, and application of AEMLD would significantly affect maritime law.

 Therefore, the Court concludes that Plaintiff need not show fault in pursuing a strict products liability cause of action under the general maritime law. Further, Ayer can be held liable for injury even if it has "executed all possible care in the prepa-

**53.** *Conti v. Ford Motor Co.*, 743 F.2d 195 (3d Cir.1984), *cert. denied* 470 U.S. 1028, 105 S.Ct. 1396, 84 L.Ed.2d 784 (1985); *Greiner v. Volkswagenverk Aktiengesellschaft*, 429 F.Supp. 495 (E.D.Pa.1977).

**54.** *See Greiner* at 497; *Conti* at 198.

**55.** Restatement 2d of Torts § 388(c).

**56.** Comment n to Restatement 2d of Torts § 388.

**57.** Doc. # 179, p. 8

**58.** *East River S.S. Corp. v. TransAmerica Delaval, Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986).

**59.** *Casrell v. Altec Industries*, 335 So.2d 128, 132 (Ala.1976); *Atkins v. American Motors Corp*, 335 So.2d 134, 138–39 (Ala.1976).

**60.** 903 F.2d 1505 (11th Cir.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 756, 112 L.Ed.2d 776 (1991)

ration and sale of (its) product." [61]

Defendant Ayer Sports Company has moved for summary judgment on the strict products liability causes of action on the grounds that 1) it neither designed nor manufactured the boat or its steering system, 2) it neither caused nor contributed to the alleged defect in the design of the steering system, 3) it had no knowledge of the alleged defect in the design of the steering system, and 4) the ProCraft bass boat (complete with its steering system) represented the state of the art available to such boat dealers in 1987 (Doc. 158, p. 122). These defenses argue, in effect, that Ayer should not be held liable unless Plaintiffs can show that Ayer was at fault. This court has concluded that fault can not be an element of a strict products liability cause of action under the general maritime law, and therefore finds that the defenses proposed by Ayer have no merit, and **DENIES** Ayer's motion for summary judgment on Plaintiff's Third Cause of Action. (Strict Products Liability)

### III. Conclusion

This case is set for trial in the March 1994 civil jury term, with jury selection on March 1, 1994. This Court will allow Plaintiffs to maintain causes of action only under the general maritime law against Defendants Teleflex and Brunswick for negligence and strict products liability, and against Defendant Ayer Sport Center for strict product liability.

**61.** *Walters v. Hiab Hydraulics,* 356 F.Supp. 1000, 1002 (M.D.Pa.1973), *quoting* Restatement 2d of Torts 402A(2)(a).