Karen M. JURGENSEN,
et al., Plaintiffs

v.

ALBIN MARINE, INC.,
et al., Defendants

No. CIV. AMD 01–340.

United States District Court,
D. Maryland.

Aug. 5, 2002.

H. Allen Black, III, Ober Kaler Grimes and Shriver, Baltimore, MD, Eugene R. Fidell, Feldesman Tucker Leifer Fidell and Bank LLP, Washington, DC, for Plaintiffs.

Dale B. Garbutt, Sandra Harlen Benzer, Whiteford Taylor and Preston, Baltimore, MD, Randell Hunt Norton, Brooke Pinkerton, Tamika L. Taylor, Thompson O'Donnell Markham, Washington, DC, Kevin M. Murphy, Carr Maloney PC, James P. Steele, Law Office, Washington, DC, for Defendants.

## MEMORANDUM

DAVIS, District Judge.

In September 1999, the newly-purchased recreational vessel owned by plaintiffs Karen M. Jurgensen and William Leary sank in the Chesapeake Bay. Accordingly, they instituted this action alleging claims based on principles of products liability, breach of contract and breach of warranty against numerous entities and persons in the chain of manufacturing and distribution of their doomed vessel. The defendants include Albin Marine, Inc., and Albin Manufacturing, Inc. (together "Albin"), Albin on the Chesapeake, Inc., Brent Albright and A & S Development, LLC d/b/a Chesapeake Motoryacht Sales. Now pending is Albin's motion for summary judgment as to plaintiffs' punitive damages claims. For the reasons discussed below, I shall grant Albin's motion for summary judgment.

I.

Pursuant to Fed.R.Civ.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material for purposes of summary judgment, if when applied to the substantive law, it affects the outcome of the litigation. *Id.* at 248, 106 S.Ct. 2505. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. "When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Shealy v. Winston,* 929 F.2d 1009, 1012 (4th Cir.1991). Of course, the facts, as well as the justifiable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court, however, has an affirmative obligation to prevent factually unsupported claims and defenses from proceeding to trial. *See Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987).

## II.

Albin is the designer and manufacturer of the vessel at issue: the Albin 33 + 3 Express Trawler (hereafter, "the vessel"). Albin on the Chesapeake, Inc., is a business that served as a dealer for Albin vessels, purchasing vessels from the Albin defendants for resale. Defendant Albright was the owner and/or principal of Albin on the Chesapeake, Inc., which sold the vessel to plaintiffs. *Albright Aff.* ¶ 4.

Plaintiffs purchased the vessel in March 1999. *Albright Aff.* ¶¶ 2–4. On September 24, 1999, the vessel sank in the Chesapeake Bay. Plaintiffs contend that the loss of the vessel was proximately caused by design and/or manufacturing defects, namely, deficiencies in the engine room vents and the bilge pump system which allowed water to enter and remain in the engine room of the vessel. *Pls.' Op.,* at 12.

In Counts XII and XIII of the amended complaint, plaintiffs seek punitive damages. They allege that prior to the sinking of their vessel, "Albin became aware that the Albin 33 + 3 Express Trawlers had unreasonably dangerous defects that created a substantial risk of flooding or sinking of such vessels, with a corresponding danger of death by drowning or personal injury for the persons on board such vessels." Allegedly despite such knowledge, Albin failed to notify the owners. *Amended Complaint* ¶¶ 108, 115.

## III.

None of the parties dispute the existence of admiralty jurisdiction over the tort claims asserted under the circumstances of this case. "All cases involving a tort committed on navigable water, whether brought under federal admiralty jurisdiction, in state court under the saving-to-suitors clause, or in federal court under diversity jurisdiction, are governed by admiralty law . . . ." *Wells v. Liddy,* 186 F.3d 505, 524 (4th Cir.1999) (quotations, citations and footnotes omitted), *cert. denied,* 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000). As to the breach of warranty claims, the parties agree that the governing law is that of Maryland.

## A.

Whether the general maritime law furnishes plaintiffs with a claim for punitive damages is something of an open question in the Fourth Circuit.

In *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), the Supreme Court held that in a suit for wrongful death of a seaman, the nondepen-

dent mother of a Jones Act seaman could not recover from the decedent's employer for loss of society damages under general maritime law. Although *Miles* did not involve a claim under the Jones Act, the Supreme Court recognized that statutory claims under the Jones Act, 46 U.S.C.A.App. § 688 and Death on the High Seas Act ("DOHSA"), 46 U.S.C.A.App. § 761 *et seq.* do not permit recovery of damages for loss of society or lost future wages. While the claim was not brought pursuant to the Jones Act, the measure of recovery was held to be dictated by the statute. The Court explained that it sought to achieve uniformity in all actions for the wrongful death of a seaman, whether brought under DOSHA, Jones Act, or general maritime law. *Id.* at 30–32, 111 S.Ct. 317.

Although "punitive damages were generally held to be available in the pre-*Miles* era for claims under general maritime law," *Glynn v. Roy Al Boat Management Corp.*, 57 F.3d 1495, 1503 (9th Cir.1995), in the wake of *Miles*, courts have been increasingly hesitant to allow punitive damages in certain general maritime actions involving personal injury or death. While *Miles* has routinely been extended to other claims of seamen limiting their remedies to compensatory damages, *see, e.g., Michel v. Total Transp., Inc.*, 957 F.2d 186 (5th Cir. 1992) (personal injury); *Lollie v. Brown Marine Service, Inc.*, 995 F.2d 1565 (11th. Cir.1993) (personal injury); *Horsley v. Mobil Oil Corp.*, 15 F.3d 200 (1st Cir.1994)

(loss of spousal or parental society), *Miles's* application to cases involving claims of non-seamen is not as clear. Indeed, courts have characterized this area of the law as "labyrinth of factual scenarios and legal theories from various courts yielding different results." *Schumacher v. Cooper*, 850 F.Supp. 438, 454 (D.S.C.1994) (quoting *Emery v. Rock Island Boatworks, Inc.*, 847 F.Supp. 114, 116 (C.D.Ill.1994)).

Some federal courts have extended *Miles* to claims involving non-seamen and have concluded, expansively, that nonpecuniary damages such as punitive damages are not recoverable under maritime law.* *Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, 4 F.3d 1084 (2d Cir.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1060, 127 L.Ed.2d 380 (1994) (concluding, based in large part on post-*Miles* authority, that representatives of a deceased non-seaman could not recover punitive damages under the general maritime law); *Frantz v. Brunswick Corp.*, 866 F.Supp. 527, 532 (S.D.Ala.1994) (explaining that in a maritime products liability personal injury action, punitive damages were not an available remedy); *In re Complaint of Clearsky Shipping Corp.*, 1998 WL 241515, at *3 (E.D.La. May 11, 1998) ("[A]lthough the law is not completely settled, since the Supreme Court's decision in *Miles*, the prevailing view is that the non-pecuniary damages ... are unavailable under the general maritime law.") (citations omitted).

---

* While *Miles* concerned nonpecuniary loss of society damages and did not specifically mention punitive damages, courts consistently have applied *Miles* to claims for punitive damages by classifying punitive damages as a type of nonpecuniary damage. *Kopczynski v. The Jacqueline*, 742 F.2d 555, 561 (9th Cir. 1984) ("Punitive damages are nonpecuniary."), *cert. denied*, 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985); *see e.g., Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496,

1507 (5th Cir.1995) (concluding that post-*Miles* injured seamen were not entitled to recover punitive damages under the general maritime law); *Anderson v. Texaco, Inc.*, 797 F.Supp. 531, 534 (E.D.La.1992) ("[T]he post-Miles district court cases, in this district and in others, speak with one voice in concluding that punitive damages are nonpecuniary and, therefore, are not recoverable under Miles's interpretation of the Jones Act.") (collecting cases).

Other courts, however, have declined to extend *Miles* to plaintiffs seeking nonpecuniary remedies who are not covered by federal statutes such as DOSHA and the Jones Act. *See, e.g., CEH, Inc. v. F/V Seafarer,* 70 F.3d 694, 700–01 (1st Cir. 1995) (noting that while *Miles* may be applicable in areas of maritime law where there is an overlap between statutory and decisional law "[i]n the instant case, however, there is no legislation whatsoever that touches upon circumstances involving the reckless or willful destruction of property.... consequently [there is] no basis under *Miles* for barring nonpecuniary relief here"); *Sutton v. Earles,* 26 F.3d 903, 916–17 (9th Cir.1994) ("The fact that the death of a seaman in territorial waters leads to recovery only of pecuniary damages is dictated by statute ... and that statute does not limit recoveries for the deaths of non-seamen.") (discussing loss of society damages) (citation omitted); *Powers v. Bayliner Marine Corp.,* 855 F.Supp. 199, 201–02 (W.D.Mich.1994)(concluding that, notwithstanding *Miles,* estates of deceased passengers could seek punitive damages), *aff'd without treating the point,* 83 F.3d 789 (6th Cir.), *cert. denied,* 519 U.S. 992, 117 S.Ct. 481, 136 L.Ed.2d 375 (1996).

Although the Fourth Circuit has yet to address this issue, three cases within the Fourth Circuit have held that punitive damages are recoverable in maritime actions involving personal injury claims. Each one explains that *Miles* is inapplicable in the absence of any statutory/decisional law overlap. *Schumacher,* 850 F.Supp. at 453–54; *Hester v. Cottrell Contracting Corp.,* 2001 WL 1764200 (E.D.N.C. Apr. 27, 2001); *Edwards v. Jones,* 1999 WL 641776 (D.Md. Feb. 9, 1999).

In *Schumacher,* a judge in the District of South Carolina held that the plaintiff's wife could bring a claim for loss of consortium where plaintiff had allegedly sustained injuries after being struck by a pontoon boat while swimming. 850 F.Supp. at 453. The court distinguished *Schumacher* from *Miles,* noting that Congress had not addressed this factual setting—personal injury negligence claim by a non-seaman. *Id.* at 453–54.

Agreeing with *Schumacher,* Judge Legg of this district declined in *Edwards* to apply *Miles* to a factual setting where no statutory overlap existed and held that punitive damages were available in a maritime personal injury case involving a non-seaman. 1999 WL 641776 *1.

*Hester* is another case from within the Fourth Circuit requiring statutory/decisional overlap to apply the framework of *Miles* to bar the recovery of punitive damages. 2001 WL 1764200. *Hester* involved a plaintiff suing for personal injuries she sustained when her motorboat collided with a dredge pipeline. The district court in *Hester* explained that because Congress had not enacted a statute covering this factual situation, *Miles* was inapplicable and punitive damages were recoverable. 2001 WL 1764200 at *3. The court relied heavily upon the Supreme Court's ruling in *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 202, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), in which the Court declined to apply federal maritime law to displace a state's wrongful death and survival statute where Congress had not prescribed remedies for deaths of non-seafarers in territorial waters. *But see In re Amtrak "Sunset Limited" Train Crash,* 121 F.3d 1421, 1422 (11th Cir.1997), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1041, 140 L.Ed.2d 106 (1998) (distinguishing *Yamaha* from personal injury actions and precluding the availability of punitive damages in personal injury actions brought under general maritime law).

■ Upon reflection, I am persuaded to follow the course charted by *Schumacher*, *Edwards*, and *Hester*, that punitive damages are permissible in a case such as this one. Here, none of the plaintiffs is a seaman or personal representative of a seaman, and no claim is made against a seaman's employer. Thus, the *Miles* decision is simply inapposite here as *Miles* does not signify a "universal uniformity of maritime tort remedy," but rather "emphasizes the importance of uniformity in the face of applicable legislation." *CEH, Inc.*, 70 F.3d at 700. In the instant lawsuit, there is no legislation that applies to plaintiffs, and therefore, they should not be restricted from pursuing punitive damages.

■ Movants seem to argue that if punitive damages are recoverable in this case, the standard of liability should be governed by state law, which would require plaintiffs to demonstrate that defendants acted with "actual malice." *See Owens–Illinois v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992). Although Maryland law is controlling as to the breach of warranty claims, as the tort claims in this case are governed by general maritime law, plaintiffs correctly assert that the applicable standard of liability as to those claims is found in maritime law. Maritime law provides for punitive damages where a defendant's intentional or wanton and reckless conduct amounts to a conscious disregard of the rights of others. *See CEH, Inc.*, 70 F.3d at 699 ("Although rarely imposed, punitive damages have long been recognized as an available remedy in general maritime actions where defendant's intentional or wanton and reckless conduct amounted to a conscious disregard of the rights of others.") (citations omitted); *Churchill v. F/V Fjord*, 892 F.2d 763, 772 (9th Cir.1988), *cert. denied*, 497 U.S. 1025, 110 S.Ct. 3273, 111 L.Ed.2d 783 (1990); *Complaint of Merry Shipping, Inc.*, 650 F.2d 622, 625 (5th Cir.1981) (employing the standard of "willfully and with gross disregard of plaintiff's rights"); *see generally*, 8 BENEDICT ON ADMIRALTY § 4.07[D] (2001).

B.

■ Ultimately, the above determinations are of little consequence as plaintiffs have marshaled no evidence establishing that Albin's conduct was intentional or wanton or that its conduct was reckless and amounted to a culpable disregard of the plaintiffs' rights such that an award of punitive damages could be sustained. To be sure, determining what conduct rises to the level at which an award of punitive damages is appropriate is often a difficult task, but here the summary judgment record shows clearly as a matter of law that the actions at issue in this case do not rise to such a culpable level.

Plaintiffs' claim for punitive damages appears to hinge entirely on their assertion that prior to the incident in suit, Albin knew of the alleged defects yet failed to notify the owners of the vessel, including plaintiffs. Plaintiffs, however, fail to establish a dispute of material fact. The plaintiffs rest their punitive damages claims on a letter to Albin from Richard Whittier ("Whittier"), another Albin customer, in which Whittier complains of serious problems with the Albin 33 + 3. Apparently, some months before the incident in suit, Whittier's Albin 33 + 3 suffered from serious flooding problems while in use, which resulted in Whittier making an emergency call to the U.S. Coast Guard for assistance. Whittier explained that upon inspecting the vessel, he discovered that "in the starboard side vent area, everything was very wet. It became obvious that in a quartering sea, water could and did pass through these vents in large

**510**

quantities jeopardizing the integrity of the boat." *Pls.' Op.,* Ex. 8 at 2.

Relying on the Whittier letter only, plaintiffs assert that Albin did nothing after receiving the correspondence to correct a design defect. Plaintiffs further contend that Albin "concealed" information about the incident from the designer. Plaintiffs maintain that when the designer learned of the "near-sinking" he "affirmatively mislead the designer [sic] by stating that the flooding was caused by debris in the rudder shaft seal, when in fact that problem had been repaired before the incident." *Pls.' Mot.,* at 7. Plaintiffs cite to no support in the record for such assertions.

In any event, Albin appropriately relies on admissible evidence in the record, including that set forth in its supplemental answers to interrogatories, to explain fully how Albin investigated the Whittier misadventure. Specifically, after receiving Whittier's correspondence, the designer of the vessel, Terrence Compton, carefully examined Whittier's craft. Compton concluded that the main problem Whittier encountered was a loss of steerage in rough seas owing in significant part to Whittier's choice to install a single engine (rather than two) on his craft, causing the vessel to broach. Compton also concluded that the additional ballast installed upon the request of Whittier (there was but one engine) contributed to the problem and that this ballast was making the boat stern heavy. Ultimately, Compton concluded that the extra weight in the stern combined with the loss of steerage and the heavy seas caused the water to enter the hull vents, most likely under the rudder shaft seal. A piece of gelcoat was subsequently discovered in the shaft seal which is believed to have caused the leak. To correct the steerage problem, Compton believed a larger rudder should be added, the keel should be extended and the excessive ballast removed. This summary of Albin's response to the Whittier report positively refutes any suggestion that Albin "did nothing" upon learning of the idiosyncratic problems with Whittier's craft. The scenario that is painted, without substantial refutation by plaintiffs, is at most negligent conduct, and not conduct rising to the level of gross or wanton conduct sufficient to support an award of punitive damages.

■ Plaintiffs also lodge various factual assertions (denied by defendants) concerning Albin's construction of the vessel, but again plaintiffs fail to indicate where corresponding evidence in the record might be found. The court "is not required to scour the record looking for factual disputes . . .," and such unsupported factual assertions will not be credited. *See Little v. Cox's Supermarkets,* 71 F.3d 637, 641 (7th Cir.1995) (internal quotations and quotation marks omitted). Moreover, plaintiffs assertions, even if credited, fail to point to evidence sufficient to sustain a claim for punitive damages as plaintiffs' claims are based mostly on Albin's alleged negligence, i.e., its alleged failure to (1) conduct stability calculations; (2) exercise quality control; and (3) ensure that vents were cut into the hull in the correct location. *Pls.' Op.,* at 5–6. Even if supported by the record, such asserted conduct does not rise to the level of conscious disregard for the rights of others. To the contrary, these alleged failures at most give rise to a claim for negligence or perhaps strict product liability or breach of warranty.

### C.

■■ As for the breach of warranty claims governed by Maryland law, movants correctly assert that the summary judgment record is woefully inadequate to support an award of punitive damages. The applicable standard of liability would require plaintiffs to demonstrate that defen-

dants acted with "actual malice." *See Owens–Illinois v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992). And that showing would have to be made by "clear and convincing evidence." *United States Gypsum Co. v. Mayor and City Council of Baltimore*, 336 Md. 145, 188, 647 A.2d 405 (1994). Having concluded that the evidence is insufficient to support an award of punitive damages under the more relaxed standard of the general maritime law, I conclude, *a fortiori*, that the evidence is insufficient under Maryland law.

### IV.

For the reasons stated above, Albin's motion for summary judgment shall be granted as to Counts XII and XIII. An order follows.

### ORDER

In accordance with the foregoing Memorandum, it is this 5th day of August, 2002, by the United States District Court for the District of Maryland, ORDERED

(1) That the defendants' motion for summary judgment (Paper No. 41) is GRANTED; and it is further ORDERED

(2) That counts XII and XIII of the amended complaint, seeking an award of punitive damages, are DISMISSED WITH PREJUDICE; and it is further ORDERED

(3) That the Clerk shall TRANSMIT copies of this Order and the foregoing Memorandum to the attorneys of record.