Isaac AGUILUZ–NUNEZ,
Plaintiff-Appellant,

v.

CARNIVAL CRUISE LINES, INC., and M/S CARNIVAL,
Defendants-Appellees,

Pierside Terminal Operators, Inc., Defendant.

No. 78–1271
Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Nov. 15, 1978.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Arnold Ginsberg, Charles R. Lipcon, Miami, Fla., for plaintiff-appellant.

Fowler, White, Burnett, Hurley, Banick & Knight, Frank J. Marston, Miami, Fla., for Carnival Cruise Lines, Inc.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

PER CURIAM:

In this seaman's personal injury suit, the District Court held that there existed no genuine issue of material fact with respect to the validity of a release executed by the plaintiff and granted summary judgment to two of the defendants. We reverse.

The plaintiff, Isaac Aguiluz-Nunez, was employed as a deckhand on the M/S Carnival in early December of 1975. At around 8 or 9 p. m. on the night of February 5, 1976, he was securing a line on the deck of the ship, which was then moored at a dock in the Port of Miami. While so engaged, he was struck on the left side of the face by a weighted heaving line thrown from the dock.

Nunez was taken to the Coral Gables Hospital, where he was treated at the expense of Carnival Cruise Lines, Inc., the owner of M/S Carnival. On February 9, he returned to work, but was unable to perform his duties because of vision problems. He was relieved of duty and put up shoreside at the McAllister Hotel. Between February 14 and March 9, Nunez was examined five times by Dr. Sanford Radofsky, the ophthalmologist in Miami to whom Carnival refers most of its employees with eye injuries. On the basis of these examinations, Dr. Radofsky concluded that surgery on the left eye would very probably cure Nunez' vision problems. Dr. Radofsky also concluded that the plaintiff's eye problems were due to conditions that predated the accident.

On March 9, Nunez met with a Carnival employee, Martin Salzedo. Salzedo had talked with Dr. Radofsky and had received a copy of his written report recommending surgery. Nunez' and Salzedo's versions of what transpired at this meeting differ significantly. The result of the meeting was that Nunez signed a release of all claims against Carnival Cruise Lines and the M/S Carnival in return for a payment of $1,500.

Nunez apparently did not have the recommended operation and instead returned to his home in Honduras. He was not reemployed by Carnival. On May 20, 1976, slightly more than two months after execution of the release, Nunez filed suit against the M/S Carnival, Carnival Cruise Lines, and Pierside Terminal Operators, Inc., the company who had been performing stevedoring services for Carnival on the night the accident occurred. The claims against the M/S Carnival and Carnival Cruise Lines

were brought under the Jones Act and the general maritime law, those against Pierside under diversity. Nunez demanded trial by jury on all claims. The M/S Carnival and Carnival Cruise Lines cross-claimed against Pierside.

The M/S Carnival and Carnival Cruise Lines moved for summary judgment on the ground that the release was valid. Upon consideration of the affidavits and depositions on file, the District Judge granted the motion. He found that the uncontroverted facts established that, at the time he signed the release, Nunez "was aware of the effect of signing the Release in that the Release operated to extinguish all claims that Plaintiff may have had against Carnival Cruise Lines, Inc., and the Defendant vessel," and concluded that the release was therefore "legally binding, as the evidence satisfies the requirements of the law referable to Releases signed by seamen."

 We disagree. Releases signed by seamen, the "wards of the admiralty," are given the most careful scrutiny by admiralty courts. The burden is on the shipowner to show that the seaman signed the release with a full understanding of his rights and the effect of his action. *See Garrett v. Moore-McCormack Co.,* 1942, 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239, 1942 A.M.C. 1645; *Charpentier v. Fluor Ocean Services, Inc.,* 5 Cir., 1976, 534 F.2d 71; *Harmon v. United States,* 5 Cir., 1932, 59 F.2d 372; 1B Benedict on Admiralty § 6 (7th ed. 1976); 1 Norris, The Law of Seamen §§ 501–521 (3d ed. 1970). On a motion for summary judgment based on a seaman's release, the shipowner has an even heavier burden to shoulder, for he must conclusively demonstrate the absence of genuine issues of material fact. *See Charpentier, supra,* at 72.

 At the time he signed the release, Nunez was not represented by counsel. He has only a fifth-grade education. He stated in his deposition that the significance of the release was not explained to him, that his legal rights were not discussed, that he understood he was receiving the $1,500 "for medical treatment and not for the accident," and that he was rushed into signing the release. He reaffirmed these statements by affidavit. The shipowner's agent who obtained the release testified differently, of course, but we think it beyond dispute that the plaintiff's submissions created a genuine issue of material fact—whether Nunez executed the release with full comprehension of the effects of his action. The trial judge improperly resolved a credibility dispute in granting summary judgment.[1]

REVERSED and REMANDED.

---

1. The defendants' brief to this Court argues almost exclusively that the summary judgment should be upheld because the medical testimony before the District Court conclusively established that the accident was not the cause of the plaintiff's visual impairment. The defendant's motion was based solely on the release, and the District Judge based his ruling solely on the release. For us to even consider defendants' causation argument would ignore fundamental principles of appellate review and would be unfair to the plaintiff, whose only opportunity to respond to the argument has been by reply brief on this appeal.