Joanne NAGLIERI, Individually & as Executrix of the Estate of Thomas J. Naglieri, deceased, Plaintiff,

v.

Gerald B. BAY, s/y Crescendo, Defendant.

Civ. No. 3:94CV1295 RNC.

United States District Court, D. Connecticut.

March 31, 1997.

---

Bradford D. Conover, John H. Reilly, Dickerson & Reilly, New York, NY, for Plaintiff.

John V. Coulter, Peterson & Ross, New York, NY, Richard N. Petrucci, Stamford, CT, for Defendant.

## ORDER

CHATIGNY, District Judge.

The Magistrate Judge's Recommended Ruling [doc. # 66] on Defendant's Motion For Summary Judgment [doc. # 33] and plaintiff's motion to amend [doc. # 61] is hereby approved and adopted.

So ordered.

## RULING ON MOTION FOR SUMMARY JUDGMENT AND MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

FITZSIMMONS, United States Magistrate Judge.

Joanne Naglieri, individually and as Executrix of the Estate of Thomas J. Naglieri (collectively "Naglieri"), filed this action against the defendants Gerald B. Bay and the S/Y Crescendo *in rem*, to recover damages for the wrongful death and pain and suffering of Thomas Naglieri, who died in a boating accident in Long Island Sound on April 14, 1994, after being swept overboard during a practice for an upcoming regatta. For the reasons that follow, defendants' Motion for Summary Judgment [1] [Doc. # 33] is

---

1. The Court has considered: defendants' motion for summary judgment [Doc. # 33]; statement of

GRANTED in part and DENIED in part and plaintiffs' Motion for Leave to Amend [2] is GRANTED [Doc. # 61].

## I. *MOTION FOR SUMMARY JUDGMENT*

Defendants move for summary judgment on two grounds. They first contend that the release signed by Thomas Naglieri is legally enforceable and absolves defendants of all liability to decedent, his heirs, legal representatives, successors and assigns, for claims arising out of his participation on the CRESCENDO. Second, defendants claim that Thomas Naglieri was not a "seaman" injured in the course of his employment as required by the Jones Act. [Doc. # 35 at 1].

## *UNDISPUTED FACTS*

1. On April 17, 1994 at 10:00 a.m., Thomas Naglieri met Gerald Bay and seven other individuals [3] at the Harbors End Marina on Long Island Sound to practice for an upcoming regatta aboard Bay's yacht, the CRESCENDO. [Def. Stat. of Undisputed Facts, Doc. # 34, at ¶ 2.] [4]

2. Before leaving the dock, Bay, as skipper of the CRESCENDO, requested that the crew sign a release. [*Id.* at 2].

3. The release states

Sailing is a sport which involves risk of injury and death. I understand that I am participating in this sport by my own decision and understand that I am responsible for my own safety. In consideration of my participation in the "CRESCENDO" sailing program, I for myself and my heirs, legal representatives successors and assigns hereby waive any and all claims which I and any of them may at any time have against GERALD B. BAY, the yacht club, officers, members of the board of trustees, chairman and members of the club committees, other club members, other crew members, and any of their employees and agents arising out of my participation in the "CRESCENDO" sailing program whether on or off the water.

4. The release, submitted by defendant as signed by Thomas Naglieri and dated April 17, 1994, provides a place for "signature by crew member." [*Id.* at Ex. E].

5. All of the individuals who sailed CRESCENDO on April 17, 1994, signed a release except for Matthew Baldwin. [*Id.* at ¶ 2, Ex. B].

6. Before sailing, Bay advised all persons aboard CRESCENDO to use a life jacket ("PFD") and safety harness. Susan Klamka and Kathryn Gottlieb both wore PFD's, but no one chose to use a safety harness. Thomas Naglieri did not wear either safety device. [*Id.* ¶ 3].

7. CRESCENDO left the Marina at approximately 10:30 a.m. [*Id.* ¶ 4]. Between 11:30 a.m. and 11:45 a.m. CRESCENDO's crew raised the spinnaker and changed course to sail downwind. *Id.* Thomas Naglieri was located in the starboard cockpit, trimming the main sail. *Id.* A violent gust of wind struck the sails of CRESCENDO. *Id.* CRESCENDO's bow submerged, causing the yacht to roll onto its port side and heel over. *Id.* Four people on board were swept overboard. *Id.*

8. Mr. Naglieri was pulled from Long Island Sound by the crew aboard the boat WAR STORIES. [Def. ¶ 5]. He was pronounced dead upon arrival at Greenwich Hospital Emergency Room, the cause of death being hypothermia and/or asphyxia due to submersion. *Id.*

---

undisputed facts [Doc. # 34]; memorandum of law in support [Doc. # 35]; plaintiff's memorandum in opposition [Doc. # 41], statement of facts in dispute [Doc. # 42]; affidavit of Bradford D. Conover [Doc. # 43], affidavit of Joanne Naglieri [Doc. # 44] and defendants' reply memorandum [Doc. # 46].

2. The Court has considered: plaintiff's motion to amend complaint [Doc. # 61]; defendants' memorandum in opposition [Doc. # 62]; and plaintiff's reply. [Doc. # 64].

3. Katherine Gottlieb, Kristine Frampton, Susan Klamka, Matthew Baldwin, William Clemens, Peter D.A. Stein, and Patrick Friedman.

4. Hereafter, each party's Local Rule 9(c) statement will be cited as "Def." Or "Pl." with a paragraph reference.

## DISPUTED FACTS

1. Joanne Naglieri states that the signature that appears on Thomas Naglieri's release was not her husband's signature. [Pl. Stat. ¶ 2, Aff. Joanne Naglieri, Doc. # 44 ¶ 3].

2. Patrick Friedman, who sailed on CRESCENDO on April 17, 1994, testified at his deposition that Mr. Bay presented the crew members with a release on the morning of April 17, 1994, but he does not recall Mr. Bay having any further discussion with the crew about the waiver. [Conover Aff. Ex.D].

## STANDARD

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P.; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact. . . . ." *Miner v. Glens Falls*, 999 F.2d 655, 661 (2d Cir.1993) (citation omitted). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. School District*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1990). After discovery, if the non-moving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Aldrich*, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

In the context of a motion for summary judgment pursuant to Rule 56(c), disputed issues of fact are not material if the moving party would be entitled to judgment as a matter of law even if the disputed issues were resolved in favor of the non-moving party. Such factual disputes, however genuine, are not material, and their presence will not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also Cartier v. Lussier*, 955 F.2d 841, 845 (2d Cir.1992).

## DISCUSSION

### 1. Negligence: Effect of the Release

Defendants argue that summary judgment should be granted as to Counts One and Three of the complaint because Thomas Naglieri executed a valid release that "acts to absolve the defendants of any liability for the claims of the decedent, or his heirs." [Def. Mem. at 5].

Any release signed by a sailor must be given "careful scrutiny by admiralty courts." *In the Matter of the Complaint of Dorsey Ruley as Owner of the Vessel Black Magic for the Exoneration from or Limitation of Liability*, 1989 A.M.C. 344, 346 (N.D.Ill.1988) (quoting *Aguiluz–Nunez v. Carnival Cruise Lines*, 1980 A.M.C. 306, 307, 584 F.2d 76, 78 (5th Cir.1978)). The ship owner has the burden of showing that the sailor signed the release with a "full understanding of his rights and the effect of his action." *Id.*

Defendants do not meet this burden. First, it is a disputed issue of fact whether Thomas Naglieri actually signed the release. Joanne Naglieri states that the signature that appears on the release is not her husband's signature. Second, although defendants contend that Bay informed the crew on April 17, 1994, that the "purpose of the release was to exonerate [him] from liability for damages for any accident or injury that occurred immediately before, during or imme-

diately after any voyage aboard the CRESCENDO," [Doc. # 33, Ex. A ¶ 6], at least one crew member, Patrick Friedman, testified that he does not recall Bay making any statements as to the effect of signing the release or saying anything about the release. [Conover Aff. Ex. D.]. These conflicting statements raise a genuine issue of material fact. Defendants, therefore, do not meet their burden of showing that Naglieri signed the release with a full understanding of his rights and the effect of his actions, and summary judgment is DENIED as to Counts One and Three of the Complaint.

### 2. *"Seaman" Under the Jones Act*

■ Defendant argues he is entitled to judgment as a matter of law with respect to plaintiffs' claim of failure to provide a seaworthy vessel because the decedent was not a "seaman" injured in the course of his employment as is required by the Jones Act, 46 U.S.C.App. § 688.

In order for plaintiffs' claim of failure to provide a seaworthy vessel to proceed, the decedent must be a "seaman" under the Jones Act, which provides in relevant part,

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply.... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. § 688(a). The Jones Act covers "seamen" injured in the "course of [their] employment;" however, the Jones Act does not define these terms. "Whether [Naglieri] is a seaman under the Jones Act is a mixed question of law and fact." *Fisher v. Nichols,* 81 F.3d 319, 321 (2d Cir.1996) (quoting *McDermott Int'l, Inc. v. Wilander,* 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991)).

The Court applies a two prong test to determine Jones Act seaman status. *See Chandris, Inc. v. Latsis,* 515 U.S. 347, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *McDermott,* 498 U.S. 337, 111 S.Ct. 807. The first prong "examines the plaintiff's employment at the time of the injury and requires that the employment 'contribut[e] to the function of the vessel or to the accomplishment of its mission'". *Fisher,* 81 F.3d at 322 (quoting *Chandris,* 515 U.S. at 376, 115 S.Ct. at 2194). Defendants do not dispute that plaintiff meets the first component of this test. Naglieri was a member of the crew on April 17, 1994, whose function was sailing CRESCENDO as practice for an upcoming regatta.

However, Naglieri fails to meet the second prong of the test, whether "the plaintiff derives his livelihood from sea-based activities." *Fisher,* 81 F.3d at 322. In other words, did Naglieri's regular employment, coupled with the work he was performing when the accident occurred, vest him with "seaman" status under the Jones Act? *Id.* at 323. The Supreme Court requires that the seaman have a "substantial connection" with the vessel "in terms of both its duration and its nature." *Chandris,* 515 U.S. at 368, 115 S.Ct. at 2190. The Supreme Court counseled against employing a "snapshot test for seaman status, inspecting only the situation as it exists at the instant of the injury; a more enduring test is contemplated." *Id.* 515 U.S. at 363, 115 S.Ct at 2187.

The Court explained

> The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based employees who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils at sea.

*Id.*

After consideration, the Court finds that Naglieri's connection with CRESCENDO was not substantial and his regular employment was land-based. Although Naglieri was an avid sailor, completed numerous sailing courses, owned several boats and participated in many races, he did not derive his

livelihood from sea-based activities. [Def. ¶¶ 6–7]. Naglieri was a real estate agent in Greenwich, Connecticut at the time of his death. *Id.* at 8. Prior to that, he worked as an executive search recruiter, and was Executive Vice President of Human Resources for New York News, Inc. *Id.* During his life, he also owned a controlling interest in a travel agency, a bus tour line and an executive search firm. *Id.* Even taking into consideration "all of [Naglieri's] sea-related activities," this Court cannot find that Naglieri is the type of person to whom the Jones Act was designed to give protection.[5] *Fisher,* 81 F.3d at 323 ("the central purpose of the Jones Act [is] to protect those who are particularly vulnerable to the perils of the sea as a result of their employment and who, by tradition, have been wards of the admiralty law.") (citing *Aguilar v. Standard Oil Co.,* 318 U.S. 724, 727–28, 63 S.Ct. 930, 932–33, 87 L.Ed. 1107 (1943)). Accordingly, summary judgment is GRANTED as to Count Two.

## II. *MOTION TO AMEND THE COMPLAINT*

Also before the Court is plaintiffs' motion to amend the complaint [Doc. # 61] to add claims for wrongful death under Conn. Gen. Stat. § 52–555 and loss of consortium under Conn. Gen.Stat. § 52–555a. Defendants object.

■ Rule 15(a) requires that a court's permission to amend a pleading "shall be freely given when justice so requires." *See* Fed. R.Civ.P. 15(a). The decision whether to grant leave to amend is within the court's sound discretion. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). As *Foman* "makes equally and explicitly clear, that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing 'spirit of the Federal Rules.' " *United States v. Continental Illinois Nat'l Bank & Trust,* 889 F.2d 1248, 1254 (2d Cir.1989) (quoting Rule 1, Fed. R. Civ P., which states that the rules are to be construed "to secure the just, speedy, and inexpensive determination of every action.").

■■ When the motion to amend is made after an inordinate delay, the burden is on the moving party to establish a satisfactory explanation. *See Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990). Prejudice may exist when extensive additional discovery would be required, when further proceedings would be delayed significantly, or where an imminent danger exists that the moving party seeks to force a favorable settlement by abusive use of the discovery process. *See Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 653 n. 6 (2d Cir.1987).

■ After consideration, the Court finds that plaintiffs have satisfactorily explained the delay in seeking to amend the complaint. Prior to the decision in *Yamaha Motor Corp., U.S.A., v. Calhoun,* —— U.S. ——, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), general maritime law preempted state wrongful death and survival statutes for accidents occurring within the territorial waters of the state, thus precluding a plaintiff from asserting claims of wrongful death and loss of consortium. Plaintiffs filed the motion for leave to file an amended complaint on January 31, 1996, less than a month after the decision in *Yamaha* was announced by the Supreme Court. The Court also finds that defendants would not be prejudiced by the granting of this motion.

In light of the amendment, the Court will permit limited additional discovery. The parties shall meet, confer and propose a joint scheduling order for completion of discovery within thirty (30) days of this ruling. Accordingly, plaintiffs' Motion to Amend Complaint [Doc. # 61] is GRANTED.

## CONCLUSION

Based on the foregoing, defendants' Motion for Summary Judgment [**Doc. # 33**] is **GRANTED** in part and **DENIED** in part. Summary judgment is **GRANTED** as to Count Two and DENIED as to Counts One and Three.

Plaintiffs' Motion to Amend Complaint [**Doc. # 61**] is **GRANTED**. Plaintiffs shall

---

5. The Court has also considered the fact that Naglieri "participated in approximately 10 sail-ing races on the CRESCENDO." [Def. ¶ 7, Aff. Joanne Naglieri, Doc. # 44 at ¶ 4].

file an Amended Complaint which conforms with this ruling within ten (10) days.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir.1989)(per curiam); *F.D.I.C. v. Hillcrest Assoc.*, 66 F.3d 566, 569 (2d Cir.1995).