**Angela T. CUSHWA, as administrator of the estate of Laura Zekoll, deceased, Plaintiff,**

**v.**

**Richard H. ROSS, individually, as the owner of the sailing vessel "Rule 62," a 2009 Jeanneau sailboat, official no: 1217548, Defendant.**

**Civil Action No. 1:11–CV–3485–CAP.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Jan. 9, 2013.

Charles H. Raley, Jr., Raley & Raley, Savannah, David M. Lewis, Michael David Deming, Deming, Parker, Hoffman, Green & Campbell, Norcross, GA, for Plaintiff.

Ann Theresa Kirk, Paul Lindsey Fields, Jr., Fields, Howell, Athans & McLaughlin, LLP, Atlanta, GA, Neil Bayer, The Bayer Law Group, Miami, FL, for Defendant.

*ORDER*

CHARLES A. PANNELL, JR., District Judge.

This matter is before the court's sua sponte reconsideration of its prior order denying the plaintiff's motion to remand [Doc. No. 22].

## I. Factual and Procedural Background

This case arises from the sinking of a sailing vessel near Great Abacos, Bahamas, on or about November 13, 2010. The plaintiff's decedent, Laura Zekoll, disappeared during the incident and is presumed dead. At the time of her death, Zekoll was the president and CEO of Advantage Computer Age, Inc. ("ACAI") and had sailed a number of times during the nine years prior to the incident. On or about November 13, 2010, Zekoll was traveling aboard the "Rule 62," a 45″ Jeanneau sailboat owned by the defendant. She joined the crew of the Rule 62 in Hampton, Virginia, planning to sail from there to Nanny Cay near Tortola in the British Virgin Islands as part of the Caribbean 1500 sailing rally. She was to sail with the defendant, his wife, and Meredith Jordan (who later dropped out of the trip and was replaced by David Shepard). The defendant paid for Zekoll's plane ticket and transportation costs from Atlanta, Georgia, to Hampton, Virginia and a return plane ticket from the British Virgin Islands back to Atlanta. The defendant also paid for Zekell's food while she was aboard the Rule 62.

The plaintiff, a citizen of Georgia,[1] filed suit in Superior Court of Fulton County in September 2011 alleging negligence and invoking the Jones Act, 46 U.S.C. § 30104 et seq., regarding the defendant's liability

---

1. *See* Complaint ¶ 9 [Doc. No. 1–1]; *see also* 28 U.S.C. § 1332(c)(2) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent.").

for general damages. The defendant removed to this court on October 12, 2011, citing diversity jurisdiction and arguing that the plaintiff's Jones Act allegations constitute a fraudulent attempt to evade this court's jurisdiction.

The plaintiff moved to remand [Doc. No. 7] arguing that her Jones Act claims are made in good faith. The court originally denied the motion to remand because the defendant had based his removal on diversity jurisdiction, not just federal-question jurisdiction [Doc. No. 22 at 2]. Nevertheless, the court subsequently has decided that it needs to reconsider this order and informed the parties of same [Doc. No. 29].

## II. Legal Discussion

 It is a well established rule that Jones Act cases filed in state court are generally not removable. 46 U.S.C. § 30104 (incorporating general provisions of Federal Employers' Liability Act ("FELA"), including 28 U.S.C. § 1445(a), which in turn bars removal); *see also Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir.1993). A court determines whether a Jones Act claim has been properly pled by examining the face of the plaintiff's complaint. *Id.* Nevertheless, a court is limited to examining the pleadings only "in the absence of any issue of a fraudulent attempt to evade removal." *Preston v. Grant Advertising, Inc.*, 375 F.2d 439, 440 (5th Cir.1967).[2] A defendant in a Jones Act claim may pierce the pleadings and properly remove a Jones Act case if he can prove that the Jones Act claim was fraudulently pled. *See Lackey*, 990 F.2d at 207. The parties have not presented, and the court has not found through its own research, any binding authority on the specific standard this court should use to determine if a Jones Act claim has been

fraudulently pled. The parties have, however, identified persuasive authority on this issue, particularly from the Fifth Circuit.

In the Fifth Circuit, a defendant's burden for proving that a Jones Act claim has been fraudulently pled is quite high. *Id.* A defendant has such a high burden because there is a tension between preventing a plaintiff from pleading a Jones Act claim simply to frustrate federal jurisdiction and "the Jones Act plaintiff's right to choose a state court forum." *Id.* Therefore, the Fifth Circuit has established the following standard, similar to the summary judgment standard, for determining if a Jones Act claim has been fraudulently pled:

> "[T]he mere assertion of fraud is not sufficient to warrant removing the case to federal court." *Yawn v. Southern Ry.*, 591 F.2d 312, 316 (5th Cir.1979) (FELA case). Defendants must prove that the allegations of the complaint were fraudulently made, and any doubts should be resolved in favor of the plaintiff. *Id.* As in fraudulent joinder cases, defendants' burden of persuasion is a heavy one. The district court must resolve disputed questions of fact from the pleadings and affidavits in favor of the plaintiff. *See B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981). The removing party must show that there is no possibility that plaintiff would be able to establish a cause of action. *Id.*

*Id.*

To apply this standard here, the court must examine the defendant's argument that there is no possibility that the plaintiff can establish a cause of action under the Jones Act. The plaintiff has filed a wrongful death and survival action under the Jones Act, 46 U.S.C. § 30104, et seq., al-

---

**2.** Decisions of the former Fifth Circuit handed down on or before September 30, 1981, are binding on this court. *Bonner v. City of* *Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

leging negligence [Doc. No. 1–1]. Congress passed the Jones Act in 1920 to give seamen expanded rights to sue for negligence because of the special conditions they face when exposed to the "perils of the sea." *Chandris, Inc. v. Latsis,* 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). These rights attach to individuals based on their status as seamen. Congress did not, however, define "seamen status," so the courts have been left with the responsibility of determining which workers qualify for the special protections of the Jones Act. *Id.* at 355, 115 S.Ct. 2172.

For most of the twentieth century, courts struggled with exactly how to define the parameters of seamen status. The only congressional guidance came in 1927 with the enactment of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), "which provides scheduled compensation (and the exclusive remedy) for injury to a broad range of land-based maritime workers but which also explicitly excludes from its coverage 'a master or member of a crew of any vessel.'" *Id.* (quoting 33 U.S.C. § 902(3)(G)). The courts now knew what other protections seamen could not get access to (i.e., the LHWCA), and the courts used this as a guide for creating the distinguishing characteristics of seamen in a series of cases that culminated in a two-prong standard the Supreme Court established in *Chandris, Inc.,* 515 U.S. at 354, 115 S.Ct. 2172.

■ The *Chandris* two-prong standard defines who may qualify for "seaman status" under the Jones Act. The Supreme Court explained:

First ... an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission.... Second ... a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.

*Id.* at 368, 115 S.Ct. 2172.

■ Further, the Court in *Chandris* developed a "no snapshot" doctrine for determining whether someone has satisfied the durational component of the second prong. Under the no snapshot doctrine, courts should not simply evaluate the worker's connection to the vessel at the time of the injury. *Id.* at 363, 115 S.Ct. 2172. Instead, courts must evaluate the entire intended relationship between the worker and the vessel. *Id.* The court's stated goal was to ensure that workers could not oscillate between various coverage regimes and to allow employers and maritime workers alike to be "able to predict who will be covered by the Jones Act ... before a particular workday begins." *Id.*

Here, Zekoll's connection to the vessel Rule 62 is not as clear as the connections the *Chandris* Court contemplated for seaman status qualification. The *Chandris* standard focuses on an employer-employee relationship when determining both "sea-based" and "land-based" maritime workers, as the Court explains when elucidating the substantial connection requirement of the second prong:

The fundamental purpose of this substantial connection is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

*Id.*

Taken in the light most favorable to the plaintiff, the facts alleged in the instant matter cloud the determination of whether Zekoll was in fact the defendant's employ-

ee (within the terms contemplated by the *Chandris* Court) at the time of the accident. Neither side disputes that Zekoll was a crewmember on the Rule 62 at the time of the incident[3] (although the parties disagree as to whether she was a "volunteer") and that the defendant paid for Zekoll's travel expenses to and from the vessel and her food while on board. There is also no dispute that Zekoll's primary employment was as CEO and owner of Advantage Computer Age, Inc. The issues for determining seaman status, then, are (1) whether Zekoll's primary employment as a non-maritime worker disqualified her from Jones Act protection and, if not, (2) whether the specific connection Zekoll had to the Rule 62 on this voyage meets the *Chandris* two-prong standard. This second determination is a mixed question of law and fact, but "if reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury" and thus not something that can be determined as a matter of law. *Id.* at 369, 115 S.Ct. 2172 (citations omitted).

To address the first issue of whether Zekoll's primary employment as CEO of ACAI disqualifies her from Jones Act Protection, it is necessary to analyze the distinction between land-based and sea-based employees outlined in *Chandris* and its progeny. The Court in *Chandris* attempted to clear the decades of confusion surrounding the definition of "seaman" by comparing the Jones Act and the subsequent LHWCA, 33 U.S.C. § 902, "which provides scheduled compensation (and the exclusive remedy) for injury to a broad range of land-based maritime workers but which also explicitly excludes from its coverage 'a master or member of a crew of any vessel.'" *Chandris,* 515 U.S. at 355, 115 S.Ct. 2172 (citing 44 Stat. (part 2) 1424, as amended, 33 U.S.C. § 902(3)(G)).

Separating the compensation schemes for land-based and sea-based maritime workers was appropriate. Workers who primarily worked at sea were historically given special protections based on the unique dangers the open ocean poses. *See McDermott Intern., Inc. v. Wilander,* 498 U.S. 337, 354, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) ("Traditional seamen's remedies ... have been 'universally recognized as ... growing out of the status of the seaman and his peculiar relationship to the vessel, and as a feature of the maritime law compensating or offsetting the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" (quoting *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 104, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (Stone, C.J., dissenting))). Those maritime workers who spend most of their time working in shipyards and are only occasionally onboard ship to make repairs, load supplies, etc., do not face the same dangers as sea-based workers who regularly venture onto the high seas out of sight of land and the shelter it can provide. Therefore, the *Chandris* Court states that the special protections the Jones Act provides to seaman should be available only to those maritime workers who spend at least 30 percent of their time "in the service of a vessel in navigation," *Chandris,* 515 U.S. at 371, 115

---

**3.** The defendant appears to contradict himself on this point. In his answer to the plaintiff's complaint, the defendant denies the plaintiff's contention that Zekoll was "working as a crewmember" [Doc. No. 2 at ¶ 9 p. 2]. In his statement of undisputed facts [Doc. No. 21–1] filed contemporaneously with his motion for summary judgment, however, the defendant states, "Ms. Zekoll was a volunteer crew member aboard the 'Rule 62'" [Doc. No. 21–1 ¶ 2 p. 2]. Taking the facts in the light most favorable to the plaintiff, the court will consider Zekoll a member of the Rule 62's crew during the voyage at issue for purposes of this motion.

S.Ct. 2172, although this number should serve only as a guideline. *Id.*

Here, Zekoll is clearly not a land—or sea-based maritime worker for her primary employment. Nevertheless, the land versus sea distinction is aimed at determining whether an individual meets the durational aspect of the second prong of the *Chandris* standard (i.e., that the person has a connection to a vessel that is substantial in duration). Here, taking the plaintiff's allegations as true, Zekoll "contribute[d] to the function of the vessel or to the accomplishment of its mission," *Chandris* at 368, 115 S.Ct. 2172:

> If she was at the helm, [her duties] consisted of monitoring course, speed, other vessels, making course corrections if necessary. There was an autopilot on the boat, and then as a secondary watch, the second part of the six hour shift would have been available for the person at the helm if some emergency arrived or they needed to communicate with another vessel, manning the radio, manning the chart plotter, [and] monitoring weather.

Dep. of Richard Ross lines 16–24 [Doc. No. 24–6]. This meets the requirements for the first *Chandris* prong, so all that remains to address is the second prong. Therefore, if Zekoll had a connection to the Rule 62 that was "substantial in terms of both its duration and its nature," *Chandris*, 515 U.S. at 368, 115 S.Ct. 2172, then her employment with ACAI is irrelevant for determining whether she qualifies for Jones Act protection.

The defendant argues that there are a number of analogous cases where courts have denied remand because the plaintiffs did not meet one or both of the *Chandris* standard prongs. The first group of these cases is largely irrelevant in the instant matter because they relate to failures of the first prong, which, as established above, the plaintiff has already met.

The second group concerns courts that have rejected Jones Act claims by recreational sailors. *See Naglieri v. Gerald B. Bay, s/y Crescendo*, 977 F.Supp. 131, 135–36 (D.Conn.1997); *Xanadu Maritime Trust v. Meyer*, 21 F.Supp.2d 1104, 1106–07 (N.D.Cal.1998); *Hardesty v. Rossi*, Civ. No. JFM–94–2320, 1995 WL 688416 at *1 (D.Md. Aug. 15, 1995). The defendant cites these cases to support his argument that Zekoll's on-shore employment precludes a Jones Act claim because the cases illustrate the second *Chandris* prong, focusing on the duration and nature of the claimants' connection to the vessels in question. Nevertheless, the plaintiff here has put forth facts that could, if true, demonstrate that Zekoll was hired as a crew member for the Rule 62, meaning that she was acting as a sea-based worker at the time of the accident. The plaintiff avers that (1) Ross paid Zekoll compensation in the form of airfare and meals, (2) interviewed her for the crew position, and (3) gave her orders as a crewmember while the ship was underway. *See* [Doc. No. 30 at 5]. Given these allegations, the court concludes that the defendant has not met his burden to show that the plaintiff has fraudulently pled a Jones Act claim. These facts, if true, could lead a rational trier of fact to conclude that Zekoll's connection to the Rule 62 was substantial both in its duration and nature. Therefore, this case should be remanded to state court as a non-removable Jones Act claim.

## III. Conclusion

Accordingly, the court VACATES its prior order denying remand [Doc. No. 22] and hereby GRANTS the plaintiff's motion to remand this case to the Superior Court of Fulton County [Doc. No. 7]. The defendant's motion for summary judgment [Doc. No. 21] will now be before the state court.

The clerk is DIRECTED to close this matter.