**Michael KELLY, et al.,**

v.

**BASS ENTERPRISES PRODUCTION COMPANY, et al.**

Civil Action No. 97–1225.

United States District Court,
E.D. Louisiana.

Aug. 5, 1998.

---

Gilbert V. Andry, IV, Gilbert V. Andry, III, Andry & Andry, New Orleans, LA, for Plaintiffs.

Michael A. McGlone, Glenn Paul Orgeron, Lemle & Kelleher, Pan American Life Center, New Orleans, LA, for Defendants.

### ORDER AND REASONS

FALLON, District Judge.

Before the Court are two motions for summary judgment addressing the availability of damages for nonseafaring plaintiffs who were injured and/or killed in state territorial waters. The first is a motion filed by defendant Bass Enterprises Production Company ("Bass") seeking dismissal of plaintiffs' punitive damages claims. The second is Bass' motion seeking dismissal of plaintiffs' nonpecuniary claims for emotional distress, *Lejeune* damages, loss of society, loss of consortium, and punitive damages. For the reasons presented below, this Court finds that nonpecuniary damages for emotional distress, *Lejeune* damages, loss of society, and loss of consortium are available to the plaintiffs involved in this case as well as to the representatives of the deceased plaintiff. However, neither the facts nor the law support an award for punitive damages.

## I. BACKGROUND

On October 4, 1996, Michael Kelly was operating his 20–foot aluminum flatboat in an inland canal in Plaquemines Parish, Louisiana. At approximately 8:30 p.m., Kelly's boat allided with a low pressure gathering pipe and its wooden support structure, owned and operated by Bass. Kelly and passenger Roderick Abadie were injured and passenger Edward Abadie was killed.[1] Kelly

---

1. Robert Brehm was also a passenger in the boat, but he is not a party to this suit.

and his passengers were returning from a fishing trip. They were clearly nonseamen. The allision occurred in navigable state territorial waters.

Kelly filed suit, claiming that Bass was negligent in failing to adequately mark and light its structure, in allowing a hazardous navigational condition to persist, and in failing to take into account the safety of others and adequately to warn other vessels. Edward Abadie's widow and daughters filed a separate wrongful death and survivorship suit against Bass on the same theory of liability, and against Kelly for failure to keep a proper lookout, operate at a safe speed under the circumstances, properly equip the vessel, use illumination, and return to harbor earlier (given weather conditions). Roderick Abadie filed a similar action against Bass and Kelly. The claims were filed under both Louisiana law and the general maritime law.

Bass initially moved for summary judgment to strike plaintiffs' nonpecuniary claims asserted under state law and to strike plaintiff's punitive damages claims under general maritime law. The Court's preliminary ruling on January 20, 1998 was that since nonpecuniary and punitive claims were in theory available to plaintiffs, Bass' motion for summary judgment had to be denied at that time.

The parties have since conducted additional discovery and extensively briefed the availability of damages for emotional distress, nonpecuniary, and punitive damages to the nonseaman plaintiffs in this case who were injured and/or killed in state territorial waters. These issues are now properly before the Court for disposition.

## II. LEGAL STANDARD

Summary judgment will be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56. In this analysis, the Court must view the facts and inferences from the evidence in the light most favorable to the non-moving party. *See Crescent Towing v. M/V Anax,* 40 F.3d 741, 743 (5th Cir.1994). Once the moving party has demonstrated that there is no genuine issue of material fact, the burden shifts to the non-moving party to prove that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not depend solely on denials contained in the pleadings, but must submit specific facts. Fed. R.Civ.P. 56(e). Mere conclusory rebuttals by the non-moving party will not defeat a motion for summary judgment. *See Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992). Moreover, if the factual context makes the non-moving party's claims implausible, the party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue of material fact. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. ANALYSIS

### A. *General Principals*

This case raises the issue of the existence, nature and/or extent of nonpecuniary damages when nonseafarers are killed or injured in state territorial waters. This area of the law has been turbulent since the Supreme Court's opinion in *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). Taking note of Justice Holmes' observation that often a page of history is worth more than a book of logic, a brief historical voyage is helpful to put the matter in perspective.

Any journey exploring this area of the law must begin with *The Harrisburg,* 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), which held that in the absence of an applicable state or federal statute, the general maritime law did not afford a wrongful death cause of action to the survivors of individuals killed in navigable waters. The harshness of this rule prompted reaction first from the courts and then from Congress.

The district and appellate courts began to allow state death acts to supplement the general maritime law with regard to deaths within state territorial waters. *See Calhoun*

v. *Yamaha Motor Corp., U.S.A.,* 40 F.3d 622, 631 (3d Cir.1994). With the advent and expansion of the unseaworthiness doctrine this approach began to result in inequities which caused uncertainty and threatened chaos. *See generally Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 212–14, 116 S.Ct. 619, 627, 133 L.Ed.2d 578 (1996); *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). Congress passed the Jones Act, 46 U.S.C. § 688, and the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 761, both of which created statutory death remedies. Problems nevertheless remained, particularly in state territorial waters. Finally, the Supreme Court took action. In *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court overruled *The Harrisburg* and for the first time recognized the presence of a nonstatutory maritime wrongful death claim for a widow of a longshoreman killed while working aboard a vessel in state territorial waters. The *Moragne* Court declined to define the nature and scope of this new cause of action, believing "final resolution should await further sifting through the lower courts in future litigation." *Id.* at 408, 90 S.Ct. 1772. It suggested that the lower courts in dealing with "particular questions of the measure of damages" should look for guidance to DOHSA and the "numerous state wrongful death acts." *Id.* at 408, 90 S.Ct. 1772.

District and appellate courts started to flesh out this new cause of action. *See Gaudet,* 414 U.S. at 584–91, 94 S.Ct. 806. Eventually, the Supreme Court focused on the substance of the remedies. In *Gaudet,* the widow of a longshoreman fatally injured on a vessel in Louisiana territorial waters brought a wrongful death action against the vessel

owner under this newly recognized nonstatutory maritime death remedy. The Court in *Gaudet* defined the contours of the remedy. Using the navigational aids suggested by *Moragne*—namely the "numerous state wrongful death acts"—the Court allowed recovery not only for pecuniary damages but also for nonpecuniary losses. *Id.* at 584–592, 94 S.Ct. 806.[2] The nonpecuniary damage allowed by *Gaudet* was a widow's loss of society. *Id.* at 587, 94 S.Ct. 806.

In *American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980), the claim for loss of society was extended to the wife of a harbor worker who sustained non-fatal injuries aboard a vessel in state territorial waters. This extension is more accurately termed loss of consortium. Considerable "sifting" continued in the lower courts in an effort to define the boundaries of the *Moragne/Gaudet/Alvez* remedy in state territorial waters,[3] but the Supreme Court remained silent on this issue for the next 10 years.[4]

Then in 1990, the Court in *Miles v. Apex Marine Corp.,* 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), considered the claim of the mother of a seaman killed in state territorial waters and held she had no claim under the general maritime law for nonpecuniary damages such as loss of society. In its analysis, the Court recognized that since *Moragne* there are in effect two causes of action for the wrongful death of seamen: one under the Jones Act (statutory) based on negligence and the other under the general maritime law (judge made federal common law) based on unseaworthiness. *Id.* at 30, 111 S.Ct. 317. The issue presented in *Miles* was whether the measure of damages under the nonstatutory cause of action could be greater than under the statutory cause of action.

2. The *Gaudet* Court in allowing recovery of nonpecuniary damages, such as loss of society (love and affection) under the *Moragne* wrongful death remedy, explained:

Thus our decision to permit recovery for loss of society aligns the maritime wrongful death remedy with a majority of state-wrongful-death statutes. But, in any event, our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction.

*Id.* at 588, 94 S.Ct. 806.

3. *See Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (DOHSA does not allow recovery of nonpecuniary damages, thus limiting any application of *Gaudet* to state territorial waters).

4. *See generally Law v. Sea Drilling Corp.,* 523 F.2d 793 (5th Cir.1975); *Barbe v. Drummond,* 507 F.2d 794 (1st Cir.1974); *Gilmore & Black, The Law of Admiralty,* 369–374 (2d Ed.1975).

The Court reasoned that since the measure of damages for the death of a seaman under the Jones Act is limited to pecuniary loss, recovery under the nonstatutory maritime death remedy also should be limited to pecuniary losses. The Court concluded:

> It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence.

*Id.* at 33, 111 S.Ct. 317.

After *Miles,* courts have uniformly held that nonpecuniary damages are not available to survivors of seamen under the general maritime law. *See, e.g.,* 1 Schoenbaum, Admiralty and Maritime Law § 5–16 (2d ed. Supp.1997); Force, *The Curse of Miles v. Apex Marine Corp.: The Mischief of Seeking "Uniformity" and "Legislative Intent" in Maritime Personal Injury Cases,* 55 La. L.Rev. 745 (1995). Nevertheless, doctrinal writers as well as lower courts continue to contemplate the impact of the *Miles* decision on the nonstatutory cause of action spawned by *Moragne* and nurtured by *Gaudet* and *Alvez* with respect to nonseaman killed or injured in state territorial waters.[5]

In *Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996), the Court took a different tack. The tragic facts giving rise to this case may be briefly summarized. Twelve-year old Natalie Calhoun was killed in a collision in territorial waters off Puerto Rico while riding a jet ski manufactured by Yamaha. Natalie's parents, residents of Pennsylvania, filed a federal diversity and admiralty action for damages against Yamaha, invoking Pennsylvania's wrongful death and survival statute. The manufacturer contended that state remedies were not applicable because the incident occurred on navigable waters within admiralty jurisdiction and general maritime law controlled to the exclusion of state law.

The Court recognized that the matter was within admiralty's domain and with admiralty jurisdiction comes the application of substantive admiralty law. *Id.* at 623, 116 S.Ct. 619; *see also East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). Nevertheless, the Court observed that "the exercise of admiralty jurisdiction ... does not result in automatic displacement of state law." *Yamaha,* 116 S.Ct. at 623.[6] In *Yamaha* the Court made a distinction between seafarers—Jones Act seamen and longshore workers—and nonseafarers. *Id.* Since Congress has not prescribed remedies for the wrongful death of nonseafarers in territorial waters, the Court concluded that state statutes were applicable to them. *Id.* at 628. As further support for this conclusion, the Court noted that Section 7 of the Death on the High Seas Act shows special deference to state law by specifically stopping DOHSA from displacing state law in territorial waters.[7]

Moreover, the Court noted that the well established principle of uniformity was not problematic because the decedent in *Yamaha* was a nonseafarer and the thrust of uniformity was to prevent inequities or even differences in the nature and scope of remedies applicable to seafarers. *Id.* at 626. *See also Calhoun v. Yamaha Motor Corp., U.S.A.,* 40 F.3d 622, 630–633 (3d Cir.1994) (reviewing in detail the inequities or differ-

---

**5.** Some courts have limited *Miles* to claims on behalf of seamen against their employers. *See, e.g., Sugden v. Puget Sound Tug & Barge Co., a Div. Of Crowley Maritime Corp.,* 796 F.Supp. 455 (W.D.Wash.1992). Others have interpreted *Miles* as precluding recovery of nonpecuniary damages by anyone receiving fatal injuries in state territorial waters. *See, e.g., Trident Marine, Inc. v. M/V Atticos,* 876 F.Supp. 832 (E.D.La. 1994); *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398 (9th Cir.1994); *Smallwood v. American Trading & Transp. Co.,* 839 F.Supp. 1377 (N.D.Cal.1993).

**6.** The Court explored the law as it existed before *Moragne* and found ample instances in which state remedies were held applicable. *Id.* at 626.

**7.** *Id.* Section 7 of DOHSA states: "The provisions of any state statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." 46 U.S.C. § 767. *See also Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 224–25, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986).

ences regarding seamen death remedies). This result is also consistent with the *raison d'etre* for the maritime uniformity doctrine: to promote consistency—and thereby some predictability—in maritime commerce. From the earliest expressions of this uniformity concept by the Supreme Court in *The Lottawanna*, 21 Wall. 558, 88 U.S. 558, 575, 22 L.Ed. 654 (1874), through the numerous maritime legislative enactments, such as the Jones Act, 46 U.S.C. § 688, Outer–Continental Shelf Lands Act, 43 U.S.C. § 1333, and the Longshore and Harbor Workers Compensation Act, 33 U.S.C. § 901, up to the most recent reference of the Court in *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 211–12, 116 S.Ct. 619, 626, 133 L.Ed.2d 578 (1996), the desire for uniformity has been inextricably tied to the promotion of international and interstate maritime commerce. *See generally* Force, *Post Calhoun Remedies For Death and Injury In Maritime Cases: Uniformity, Whither Goest Thou?*, 21 Tul. Mar. L.J. 7, 37–40 (1996).[8] Where nonseafarers are involved, the likelihood that maritime commerce interests would be paramount is remote, and when these nonseafarers are injured in state territorial waters, maritime commerce concerns are even less affected and state interests easily outweigh the need for uniformity. This result is also supported by the recent trend of Supreme Court opinions upholding state law. *See generally* Robertson, *The Applicability of State Law in Maritime Cases After Yamaha Motor Corp., U.S.A. v. Calhoun*, 21 Tul. Mar. L.J. 81, 95 (1996). Thus the application of state remedies in this instance should not be denied because of a concern with its effect on uniformity.

In the final analysis, *Yamaha* neither expands nor restricts the *Moragne* nonstatutory maritime death cause of action. In fact, *Yamaha* does not even deal with the *Moragne* cause of action. *Yamaha* simply recognizes that state remedies apply to nonseafarers killed in territorial waters. Thus the heated dialogue reflected in the jurisprudence and doctrinal writing regarding the effect of *Miles* on the nonstatutory maritime wrongful death remedy (i.e., the *Moragne* remedy) is inapplicable when considering the nature and extent of the state court remedies available to nonseafarers injured or killed in territorial waters.

### B. *Application*

With these general principles in mind, it is appropriate to turn to the facts in the present case. The allision between the vessel and platform resulted in one wrongful death and survivorship claim and two personal injury claims. The widow and three major nondependent daughters of the decedent, Edward Abadie, filed a wrongful death claim under the Louisiana Wrongful Death and Survivorship Statute and the general maritime law. In addition to pecuniary losses, these claimants seek recovery for nonpecuniary damages such as loss of society. One of the passengers, Roderick Abadie, the brother of decedent Edward Abadie, asserts a claim under Louisiana law and general maritime law for, *inter alia*, physical pain and emotional and psychiatric damage he sustained because of his own physical injuries as well as from witnessing his brother's fatal injury. The operator of the vessel, Michael Kelly, seeks redress for his injuries while his wife,

---

**8.** The Court has long recognized that the need for uniformity in maritime law flows from the same constitutional principals which require uniformity in the general rules of commerce which govern all interstate commercial activity. *See, e.g., The Lottawanna*, 21 Wall. 558, 88 U.S. 558, 22 L.Ed. 654 (1874) ("It certainly could not have been the intention of the Constitution to place the rules and limits of maritime law under the disposal and regulation of the several states, as that would have defeated the uniformity and consistency which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the states with each other or with foreign states."); *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917)

(The Court stated that state legislation affecting maritime commerce is invalid if "it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of general maritime law, or interferes with the proper harmony and uniformity of that law in its intentional and interstate relations."); *Knickerbocker Ice Co. v. Stewart*, 253 U.S. 149, 164, 40 S.Ct. 438, 64 L.Ed. 834 (1920) ("The purpose of granting admiralty jurisdiction to the federal government was to commit direct control to the federal government to relieve maritime commerce from the unnecessary burdens and disadvantages incident to discordant legislation.").

Eileen Kelly, seeks recovery under Louisiana law for loss of consortium. Finally, all claimants seek punitive damages. At this point it is appropriate to analyze the following nonpecuniary damage claims.

### 1. Death Claim of Survivors of Edward Abadie

Claims for loss of society were filed by the decedent's widow as well as his three major non-dependent daughters.

 With regard to the widow's claim, Louisiana law clearly allows both a wrongful death and survivorship claim. La. Civ.Code arts. 2315.1 and 2315.2. The claim includes recovery for nonpecuniary damages such as loss of society. La. Civ.Code art. 2315. Since the decedent was not a seafarer and his death occurred in the territorial waters of Louisiana, Louisiana law is applicable. *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996); *see also American Dredging Co. v. Lambert*, 81 F.3d 127 (11th Cir.1996). Thus Jane O. Abadie, the widow of Edward Abadie, has a claim under Louisiana law for the nonpecuniary damage of loss of society.[9]

 With regard to the claims of the major non-dependent children, Louisiana law again allows both a wrongful death and survivorship claim which includes nonpecuniary losses, such as loss of society. *See* La. Civ. Code arts. 2315, 2315.1 and 2315.2. There is, however, authority for the position that under the *Moragne* nonstatutory wrongful death remedy, recovery for loss of society damages is contingent on financial dependency. *See, e.g., Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084 (2d Cir.1993); *Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455 (5th Cir.1985); *Truehart v. Blandon*, 672 F.Supp. 929 (E.D.La.1987). At first blush, this seems to present a conflict between a state statute and federal law, namely, the *Moragne* nonstatutory wrongful death remedy.

*Yamaha*, however, teaches that only when Congress "has prescribed a comprehensive tort recovery regime to be uniformly applied" is the application of a state statute enlarging the damages prohibited. *Yamaha*, 116 S.Ct. at 628. The Court was clear that "Congress has not prescribed remedies for the wrongful deaths of nonseafarers in territorial waters." *Id.* Thus the application of Louisiana law in this instance has not been prohibited at least by Congress. But, is it affected by the Court's ruling in *Moragne*? Commenting on the impact of *Moragne* on state remedies, *Yamaha* cites with approval the Third Circuit's observation:

> *Moragne* ... showed no hostility to concurrent application of state wrongful death statutes. Indeed, to read into *Moragne* the idea that it was placing a ceiling on recovery for wrongful death, rather than a floor, is somewhat historical. The *Moragne* cause of action was in many respects a gap-filling measure to ensure that seamen, (and their survivors) would all be treated alike. The 'humane and liberal purpose underlying the general maritime remedy of *Moragne* was driven by the idea that survivors of seamen killed in state territorial waters should not have been barred from recovery simply because the tort system of the particular state in which a seaman died did not incorporate special maritime doctrines. It is difficult to see how this purpose can be taken as an intent to preclude the operation of state laws that do supply a remedy.

*Id.* at 628 (citations omitted).

Rather than perceiving a conflict between a state wrongful death statute and a nonstatutory general maritime wrongful death remedy, the *Yamaha* Court saw the issue as a concurrent application of two remedies. *Id.*

---

**9.** Whether she also has a claim under the *Moragne* nonstatutory wrongful death remedy is not answered by *Yamaha*. In fact, this issue was specifically left open by the Court. *See Yamaha*, 116 S.Ct. at 625 n. 7. *See also* Robertson, *The Applicability of State Law in Maritime Cases After Yamaha Motor Corp., U.S.A. v. Calhoun*, 21 Tul. Mar. L.J. 81, 99 (1996). There is considerable controversy as to the nature and scope of the *Moragne* remedy post *Miles*. Nevertheless, it should be noted that—at least with regard to decedents not covered by the Jones Act—Louisiana law is not inconsistent with general maritime law with regard to allowing a widow to recover nonpecuniary damages, such as loss of society. *See Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).

As support for this position the Court cited *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 100 S.Ct. 2432, 65 L.Ed.2d 458 (1980), which held that a state may apply its workers' compensation scheme to land-based injuries that fall within the compass of the Longshore and Harbor Workers' Compensation Act. The Court in *Yamaha* observed that "a state's remedial scheme might be 'more generous than federal law' but nevertheless could apply because Congress indicated no concern 'about a disparity between adequate federal benefits and *superior* state benefits.'" *Yamaha,* 116 S.Ct. at 628. Applying the same reasoning, this Court concludes that neither Congress nor the *Moragne* wrongful death remedy poses any impediment to the application of Louisiana law when a nonseafarer is killed in Louisiana territorial waters. Thus, the major non-dependent daughters of Edward Abadie may assert their Louisiana wrongful death claims, including loss of society.

### 2. *Emotional and Psychiatric Damage of Roderick Abadie*

■ Roderick Abadie seeks recovery for emotional and psychiatric damages allegedly resulting from the physical injuries he sustained as well as from witnessing the catastrophic death of his brother, Edward. Both Louisiana law and general maritime law allow recovery for mental and physical pain and suffering resulting from a personal injury. *See* La. Civ.Code art. 2315; *Morris v. Maryland Cas. Co.,* 657 So.2d 198 (La.App. 3 Cir.1995); *Gough v. Natural Gas Pipeline Co. Of America,* 996 F.2d 763 (5th Cir.1993). Thus, Roderick Abadie is entitled to assert claims for emotional and psychiatric damages resulting from his own physical injuries.

■ Louisiana law also allows the brother of an injured person to recover damages for mental anguish or emotional distress suffered as a result of witnessing the event causing the other person's injury or coming upon the scene soon thereafter. La. Civ. Code art. 2315.6(A)(3). These damages are often termed *"Lejeune"* damages because they were first recognized in *Lejeune v. Rayne Branch Hosp.,* 556 So.2d 559 (La. 1990). For a claimant to recover mental anguish or emotional distress in this instance, however, the injured person must suffer the type of harm that a reasonable person would be expected to suffer from witnessing the event. La. Civ.Code art. 2315.6(B).

In this case, when the allision occurred, Roderick Abadie was in the same boat, within several feet of his brother and was himself injured. The force of the collision knocked a portion of Edward Abadie's brain out of his skull. His brother Roderick Abadie witnessed this event and began life-saving efforts to no avail. These facts clearly indicate Roderick Abadie satisfies the status and experience prerequisites to bring a claim under Louisiana law. Such a claim is not inconsistent with principles of general maritime law. Roderick Abadie was certainly within the zone of danger and thus is not foreclosed from bringing a claim based on the general maritime law.[10] However, since Roderick Abadie received personal injuries at the time of the incident and can recover psychiatric and emotional damages resulting from his own injuries under the general maritime law, recovery under the zone of danger theory is not necessary. *See Gough v. Natural Gas Pipeline Co. of America,* 996 F.2d at 767.

### 3. *Loss of Consortium Claim of Eileen A. Kelly*

■ Louisiana law allows the spouse of a non-fatally injured person to recover damages for loss of consortium resulting from the injury. La. Civ.Code art 2315; *see also Tessier v. H.S. Anderson Trucking Co.,* 713 F.2d 135 (5th Cir.1983); *Hollie v. Beauregard Parish Police Jury,* 680 So.2d 1218 (La.App. 3 Cir.1996); *Abadie v. Commercial Union Ins. Co.,* 464 So.2d 979 (La.App. 4 Cir.1985); *Ferguson v. Burkett,* 454 So.2d 413 (La.App. 3 Cir.1984).

The United States Supreme Court also allows recovery for this element of damage under the general maritime law. *See Ameri-*

**10.** *See generally* Meunier, *Elements of Recovery in Maritime Personal Injury Cases,* 72 Tul. L.Rev.

805, 810 (1977).

*can Export Lines, Inc. v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) (extending the damage element of loss of society announced in *Gaudet* to spouses of injured parties on the basis that there "is no apparent reason to differentiate between fatal and nonfatal injuries in authorizing the recovery of damages for loss of society"). Since *Miles,* some courts and commentators have questioned the vitality of a loss of consortium claim under general maritime law. Courts have consistently held that loss of consortium is not applicable where seamen are injured. There is, however, some dispute as to whether such a claim may be brought under the general maritime law when nonseamen are injured. *See, e.g., Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978); *Nichols v. Petroleum Helicopters, Inc.,* 17 F.3d 119 (5th Cir.1994); *Gravatt v. City of New York,* 1998 WL 171491 (S.D.N.Y.); *Naglieri v. Bay,* 977 F.Supp. 131 (D.Conn.1997); *Blome v. Aerospatiale Helicopter Corp.,* 924 F.Supp. 805 (S.D.Tex.1996); *Bergeron v. Atlantic Pacific Marine,* 899 F.Supp. 1544 (W.D.La.1993). Nevertheless, whether or not a cause of action for loss of consortium exists under the *general maritime law* is irrelevant. Eileen Kelly's claim for loss of consortium is allowed under Louisiana law, and Louisiana law, according to *Yamaha,* is applicable to nonseafarers injured on Louisiana territorial waters. Thus she appears to have a claim for this nonpecuniary loss.

But let us pause for a moment and remember that *Yamaha* involved a claim resulting from a fatal injury. The claim of Eileen Kelly results from a non-fatal injury. The pregnant question in this case is whether a distinction should be made between a state law claim occurring from a fatal injury and a state law claim resulting from a non-fatal one. Nothing in *Yamaha* dictates such a distinction. A fair reading of the case reveals that the state statutory law applies to nonseafarers injured in state territorial water regardless of whether their injury was fatal or non-fatal. Furthermore, the application of *Yamaha* to both fatal and non-fatal injuries is consistent with the progeny of *Miles v. Apex Marine Corp.* which generally extends the ruling of *Miles,* a death case, to cases involving non-fatal injuries.[11]

Neither logic nor maritime history supports restricting *Yamaha* to only fatal injury claims. *See Gravatt v. City of New York,* 1998 WL 171491 (S.D.N.Y.). Thus, Eileen Kelly's claim for loss of consortium under Louisiana law is "preserved" by *Yamaha,* 116 S.Ct. at 628.

Defendant takes issue with this result, arguing it should be rejected because it places a nonseaman (or his survivors) in a better position than a seaman who has been termed the "ward of the admiralty" deserving special solicitude. This argument lacks persuasive force. First, the law is clear that simple disparity between adequate federal benefits and superior state benefits is not sufficient to abort the application of state law. Second, a seaman (or his progeny) need not feel deprived of remedies when compared to the nonseaman. The seaman, unlike his nonseafaring brother, has a claim for maintenance and cure—in many ways the equivalent of workers compensation—in addition to a claim for damages under both a negligence theory (Jones Act), and a strict liability theory (unseaworthiness).

Moreover, the absolute power to select the forum—state or federal—as well as the mode of trial—jury or non-jury—as well as other causes of action give an arsenal of remedies to seafarers not enjoyed by nonseafarers injured fatally or non-fatally in state territorial waters.[12] Thus Eileen Kelly should not be

**11.** *See Murray v. Anthony J. Bertucci Const. Co., Inc.,* 958 F.2d 127 (5th Cir.1992); *Michel v. Total Transp., Inc.,* 957 F.2d 186 (5th Cir.1992); *Lischka v. Tidewater Services, Inc.,* 1997 WL 27066 (E.D.La.); *Earhart v. Chevron U.S.A., Inc.,* 852 F.Supp. 515 (E.D.La.1993); *Cater v. Placid Oil Co.,* 760 F.Supp. 568 (E.D.La.1991); *Anglada v. Tidewater, Inc.,* 752 F.Supp. 722 (E.D.La.1990).

**12.** For example, attorney's fees are allowed in some instances for not paying maintenance and cure, *Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496 (5th Cir.1995) (*en banc*); statutory penalties are allowed for failing to pay wages, 46 U.S.C. § 10313. *See generally* Force, *Post Calhoun Remedies For Death and Injury In Maritime Cases: Uniformity, Whither Goest Thou?,* 21 Tul. Mar. L.J. 7, 18 (1996).

estopped from pursuing her state remedy for loss of consortium.

### 4. *Punitive Damage Claims Asserted by the Plaintiffs*

■ All of the plaintiffs assert a punitive damage claim against defendant, Bass. Louisiana law is very selective in allowing punitive damages. Such damages are allowed in only a few instances, none of which are applicable to the facts of this case. La. Civ.Code art. 2315.4 (allowing punitive damages when the damage results from the defendant's intoxication); art. 2315.7 (allowing punitive damages when damage is caused by criminal sexual activity occurring during childhood). Thus the punitive damage claims are not supported by Louisiana law.

The plaintiffs have also sought recovery for this item of damage under the general maritime law. The concept of punitive damages has had a long and turbulent voyage through the annals of maritime history. *See* Robertson, *Punitive Damages in American Maritime Law*, 28 J. Mar. & Com. 73 (1997) (tracing punitive damages in maritime law from 1851 to the present). Since the Supreme Court's ruling in *Miles,* there has been considerable dialogue by both the courts and commentators over not only the vitality but also the very existence of the punitive damage remedy in maritime law.[13] While the *Miles* decision had nothing directly to do with punitive damages, many lower courts have concluded that the analytical framework of *Miles* dictates the elimination of punitive damages under general maritime law. *See Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496 (5th Cir.1995) (*en banc*). *See also* Force, *The Curse of Miles v. Apex Marine Corp.: The Mischief of Seeking "Uniformity" and "Legislative Intent" in Maritime Personal Injury Cases,* 55 La. L.Rev. 745 (1995); Robertson, *Punitive*

*Damages in American Maritime Law,* 28 J. Mar. L. & Com. 73 (1997).

In the present case, this Court need not attempt to navigate in these choppy waters in an effort to discover whether or not punitive damages exist with regard to nonseafarers injured on state territorial waters because the facts of the present case do not satisfy the formidable requirements for punitive damages even if they are still available to nonseafarers. *See Matter of P & E Boat Rentals, Inc.,* 872 F.2d 642 (5th Cir.1989). Thus the defendant's motion seeking dismissal of the claims for punitive damages is granted.

## IV. CONCLUSION

For the foregoing reasons, Bass' May 29, 1998 motion for summary judgment on plaintiffs' punitive damages claims is GRANTED and its July 7, 1998 motion for summary judgment on plaintiffs' nonpecuniary claims for emotional distress, *Lejeune* damages, loss of society, loss of consortium, and punitive damages is GRANTED IN PART as to punitive damages and DENIED IN PART as to all other nonpecuniary loses.

**13.** *See, e.g. In re Amtrak Sunset Ltd. Train Crash,* 121 F.3d 1421 (11th Cir.1997); *Guevara v. Maritime Overseas Corp.,* 59 F.3d 1496 (5th Cir.1995); *Glynn v. Roy Al Boat Management Corp.,* 57 F.3d 1495 (9th Cir.1995); *Wahlstrom v. Kawasaki Heavy Industries, Ltd.,* 4 F.3d 1084 (2d Cir.1993); *Hunter v. Seabulk Offshore, Ltd.,* 993 F.Supp. 973 (E.D.La.1998); *Hayden v. Acadian Gas Pipeline*

*System,* 1997 WL 382059 (E.D.La.); *Williams v. Texaco,* 1997 WL 250009 (E.D.La.); *O'Hara v. Celebrity Cruises, Inc.,* 979 F.Supp. 254 (S.D.N.Y. 1997); *In the Matter of Cropwell Leasing,* 1996 WL 700689 (E.D.La.); *Boyd v. Cinmar of Gloucester, Inc.,* 919 F.Supp. 208 (E.D.Va.1996); *Carolina Clipper, Inc. v. Axe,* 902 F.Supp. 680 (E.D.Va.1995).