943 So.2d 1204 (2006)
Lawrence BOUCVALT, Jr., Kathryn Boucvalt, Allison Boucvalt, Jason Boucvalt, David Jones, Matthew Jones, Stacie Recotta, and Shawn Ploger Individually and as Representative of the Minors Brendon Ploger and Megan Ploger
v.
SEA-TRAC OFFSHORE SERVICES, INC., Willie J. English, Jr. and Raymarine, Inc.
Lawrence X. Boucvalt, III, Slick-Liquor Charters, LLC, and Clarendon National Insurance Company
v.
Sea-Trac Offshore Services, Inc., Raymarine, Inc. and Ship and Sail, Inc.
Nos. 06-CA-103, 06-CA-104.
Court of Appeal of Louisiana, Fifth Circuit.
October 17, 2006.
*1205 Kenneth M. Klemm, James H. Daigle, Nyka M. Scott, Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, New Orleans, Louisiana, for Plaintiffs/Appellants, Lawrence X. Boucvalt, III, Slick-Liquor Charters, LLC and Clarendon National Insurance Company.
Gary P. Koederitz, Koederitz & Wilkins, LLC, Baton Rouge, Louisiana, for Plaintiffs/Appellants, Lawrence Boucvalt, Jr., Kathryn Boucvalt, Allison Boucvalt, Jason, Boucvalt, David Jones, Matthew Jones, Stacie Recotta, and Shawn Ploger, Individually and as Representative of the Minors, Brendon Ploger and Megan Ploger.
Craig R. Nelson, Nelson Fay, LLC, New Orleans, Louisiana, for Defendant/Appellee, Raymarine, Inc.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and FREDERICKA HOMBERG WICKER.
DALEY, Judge.
Plaintiffs appeal the grant of summary judgment in favor of defendant, Raymarine, Inc. (hereinafter referred to as Raymarine), dismissing plaintiffs' cause of action for punitive damages under general maritime law. The trial court found that the allegations in plaintiffs' petition did not rise past ordinary negligence, and accordingly dismissed that cause of action. Plaintiffs appeal. We affirm the judgment of the trial court.
This lawsuit arises out of an allision in the Gulf of Mexico between the 40-foot yacht Slick Liquor and a well jacket owned by Chevron, USA. Plaintiff Lawrence X. Boucvalt, III, was the owner of the yacht and a passenger at the time of the accident. The other plaintiffs were passengers on the yacht. None of the plaintiffs are seamen. The accident happened on Father's Day, June 20, 2001. Defendant, Raymarine, manufactured the autopilot on board the yacht, which is alleged to have malfunctioned and contributed to the cause of the accident. Other defendants are not part of this appeal.
Plaintiffs' Second Amended and Supplemental Petition for Damages asserted causes of action against defendant, Raymarine, for gross negligence under General Maritime Law, and requested punitive damages. Raymarine filed a Motion for Summary Judgment seeking the dismissal of all of plaintiffs' punitive damage claims in both actions against it, arguing that 1) Louisiana law does not provide for the recovery of punitive damages under negligence, products liability, redhibition, or breach of warranty actions; 2) punitive damages are not allowed in claims made under the general maritime law that have been made in this case, and 3) plaintiffs have alleged no acts of intentional wanton or reckless conduct that amount to a conscious disregard for the rights of others.
Plaintiffs, in their Opposition to Raymarine's Motion for Partial Summary Judgment, argue that:
""Punitive damages are available under the general maritime law and may *1206 be imposed for "conduct which manifests `reckless or callous disregard' for the rights of others or for conduct which shows `gross negligence or actual malice or criminal indifference'""
At the hearing on this Motion, the trial court found that the allegations against Raymarine in the Second Amended and Supplement Petition failed to constitute gross negligence as a matter of law, and that these allegations sounded only in ordinary negligence. Accordingly, he granted Raymarine's Motion for Partial Summary Judgment.
Plaintiffs argue on appeal that the trial court improperly placed the burden of proof on the plaintiffs to show what Raymarine could not demonstrate, and improperly weighed the evidence. Further, they argue that the trial judge improperly held them to the standard of demonstrating some intentional act.
Summary judgment will be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. C.C.P. art. 966(B). The party bringing the motion bears the burden of proof; however, where the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party's claim. C.C.P. art. 966(C)(2). Thereafter, if the adverse party fails to produce factual support sufficient to show that he will be able to meet his evidentiary burden of proof at trial, no issue of material fact exists and the moving party is entitled to summary judgment. Id. Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co., 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086. The decision as to the propriety of a grant of a Motion for Summary Judgment must be made with reference to the substantive law applicable to the case. Sun Belt Constructors, a Div. of MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350 (La.App. 5 Cir.1988).
Even though this case was brought in state court, reference to admiralty law is necessary to determine the rights and liabilities of the parties.[1] Thorough research has revealed that neither the United States Supreme Court nor the Federal Fifth Circuit has spoken definitively on the narrow issue whether a cause of action for punitive damages arises under the general maritime law in favor of these plaintiffs, none of whom are seamen. The Supreme Court's ruling in Miles v. Apex Marine, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), upon which defendants rely to argue that the cause of action is disallowed, recognized a general maritime cause of action for the wrongful death of a seaman, but held that damages recoverable in an action for wrongful death of a seaman do not include nonpecuniary damages, such as loss of society. In reaching this conclusion, the Court enunciated principles of uniformity relevant to wrongful death actions, whether under DOHSA,[2] the Jones Act, or general maritime law. In other words, the court emphasized the importance of uniformity of remedies in the face *1207 of applicable legislation. The court held that it could not, in its place in the constitutional scheme, recognize a cause of action under general maritime law where remedies to seaman and their survivors were limited by legislation such as the Jones Act and DOHSA.
The opinion in Miles, however, made no mention of punitive damages. As the court stated in Kelly v. Bass Enterprises Production Co., 17 F.Supp.2d 591 (E.D.La.8/5/98):
The concept of punitive damages has had a long and turbulent voyage through the annals of maritime history. See Robertson, Punitive Damages in American Maritime Law, 28 J. Mar. & Com. 73 (1997) (tracing punitive damages in maritime law from 1851 to the present). Since the Supreme Court's ruling in Miles, there has been considerable dialogue by both the courts and commentators over not only the vitality but also the very existence of the punitive damage remedy in maritime law. (cites omitted) While the Miles decision had nothing directly to do with punitive damages, many lower courts have concluded that the analytical framework of Miles dictates the elimination of punitive damages under general maritime law. See Guevara v. Maritime Overseas Corp., 59 F.3d 1496 (5th Cir.1995) (en banc). See also Force, The Curse of Miles v. Apex Marine Corp.: The Mischief of Seeking "Uniformity" and "Legislative Intent" in Maritime Personal Injury Cases, 55 La. L.Rev. 745 (1995); Robertson, Punitive Damages in American Maritime Law, 28 J. Mar. L. & Com. 73 (1997).
The Kelly court noted that the Eastern District of Louisiana is one of the many courts who have expanded Miles's holding and disallowed a cause of action for punitive damages to nonseaman plaintiffs under the general maritime law, citing Hunter v. Seabulk Offshore, Ltd., 993 F.Supp. 973 (E.D.La.2/19/98). The court in Kelly, however, declined to "navigate in these choppy waters in an effort to discover whether or not punitive damages exist with regard to nonseafarers injured on state territorial waters because the facts of the present case do not satisfy the formidable requirements for punitive damages even if they are still available to nonseafarers."
This Court notes that the Louisiana appellate circuits have addressed the issue of the availability of punitive damages under general maritime law. This Court, in Crane v. Diamond Offshore Drilling, Inc., 99-166 (La.App. 5 Cir. 9/15/99), 743 So.2d 780, held that punitive damages were not available under general maritime law to a Jones Act seaman suing his employer. The case does not address the particular issue before this Court in this case, however.
The Louisiana First Circuit, in Rebardi v. Crewboats, Inc., 04-0641 (La.App. 1 Cir. 2/11/05), 906 So.2d 455, reversed the grant of an Exception of No Cause of Action and held that a cause of action for punitive damages existed under general maritime law to injured nonseamen because the cause of action did not arise under the Jones Act or DOHSA and thus, was not barred under the Miles damages uniformity principle as no federal legislation touched upon the circumstances presented in that case.
The Third Circuit has recognized a cause of action for punitive damages in cases arising under the general maritime law for both property damage[3] and for the *1208 death of a nonseaman.[4]
The Fourth Circuit, however, has held that there is no cause of action under general maritime law for the wrongful death of a nonseaman, and further held that punitive damages are not recoverable under general maritime law claims brought within state court. Brodtmann v. Duke, supra. In reaching its conclusion, the court discussed the jurisprudential progeny of Miles. The court found that its previous holding in Bridgett v. Odeco[5] was not distinguishable from the facts before it, since Bridgett, who was a seaman, brought his claim against defendant, Odeco, solely as the owner of the vessel, under maritime law; in other words, Bridgett was not a seaman vis a vis defendant, Odeco.[6]
The trial court's disposition on summary judgment does not require us to address whether or not a cause of action for punitive damages exists under general maritime law for a nonseaman. In the instant case, without discussing whether the cause of action for punitive damages exists, the trial court determined that plaintiffs' allegations did not rise to the level of gross negligence. This Court finds that Raymarine, as the mover who does not bear the burden of proof on this issue at trial, properly pointed out a lack of factual support for the plaintiffs' claims for punitive damages. The burden then shifted to plaintiffs to come forward with factual support sufficient to show that they will be able to meet their evidentiary burden of proof at trial, which they failed to do.
The allegations against Raymarine can be summarized as failure to adequately test the product before it went to market, failure to warn, failure to conduct sufficient testing on the product's components, breach of express and implied warranties, and failure to adequately communicate installation guidelines to its dealers, etc. In support of their position, in their appellate brief, plaintiffs point out the deposition testimony of three witnesses, Dr. John Kreifeldt, Carl Busuttil-Reynaud, and Christopher Martin.[7] Plaintiffs argue that these witnesses' testimonies establish that Raymarine knew about erratic behavior of the fluxgate compass when a vessel using the autopilot passed large metal objects; Raymarine declined to perform hazards testing on the flux gate compass component of the auto pilot, and knew about problems with the flux gate compass, but did not investigate further until this litigation. This Court notes that in the deposition testimony of Reynaud, the statement plaintiffs rely on was taken out of context. This witness testified that the entire auto pilot system was tested, of which the flux gate compass was a component, though no testing was performed on the flux gate compass individually and separate from its function within the autopilot system, because the flux gate compass was a known *1209 technology at the time. Plaintiffs do not allege that no testing was performed.
The trial court was correct in its ruling that plaintiffs' allegations of Raymarine's negligence did not rise to reckless or callous disregard for the rights of others, or gross negligence. See Kelly v. Bass Enterprises Production Co., supra (failing to adequately light and mark the structure, allowing a hazardous navigational condition to persist, failing to take into account the safety of others, and failing to adequately warn other vessels did not constitute gross negligence); See also Jurgensen v. Albin Marine, Inc., 214 F.Supp.2d 504 (D. Maryland 8/5/2002) (alleged failures by vessel designer-manufacturer to investigate flooding problems experienced by one vessel owner and to conduct stability calculations, exercise quality control, ensure that vents were cut into vessel hulls in correct location, and failure to warn other owners of these defects, at most gave rise to claim for negligence, strict product liability, or breach of warranty, and did not rise to the level of conscious disregard for the rights of others required, under maritime law, to support punitive damages claims asserted by the owners of a sailboat that sank approximately six months after the owners purchased it.) Our review of the transcript of this hearing shows that the trial judge correctly enunciated the standard for gross negligence, and did not hold the plaintiffs to the standard of proving an intentional act.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Brodtmann v. Duke, 96-0257 (La.App. 4 Cir. 2/11/98), 708 So.2d 447, writ denied, 98-0645 (La.4/24/98), 717 So.2d 1177, and 98-0658 (La.4/24/98), 717 So.2d 1178; cert. denied 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).
[2] Death on the High Seas Act, 48 U.S.C. § 761 et seq.
[3] Doxey v. Lake Charles Pilots, Inc., 00-530 (La.App. 3 Cir. 1/31/01), 781 So.2d 589, writ denied, 01-0614 (La.5/4/01), 791 So.2d 654, cert. denied, 534 U.S. 895, 122 S.Ct. 215, 151 L.Ed.2d 153 (2001), and Poe v. PPG Indus., 00-1141, 00-1142, 00-581 (La.App. 3 Cir. 3/28/01), 782 So.2d 1168, writ denied, 01-1239 (La.6/22/01), 794 So.2d 801.
[4] Quinn v. St. Charles Gaming Co., Inc., 01-1038 (La.App. 3 Cir. 2/6/02), 815 So.2d 968, writ denied, XXXX-XXXX (La.4/12/02), 813 So.2d 412.
[5] 93-1536 (La.App. 4 Cir. 12/15/94), 646 So.2d 1249, writs denied 95-0381, 95-0398 (La.3/30/95), 651 So.2d 840.
[6] The Federal Fifth Circuit has held that sea men do not have a cause of action for punitive damages under general maritime law against non-employer defendants. See Scarborough v. Clemco Industries, 391 F.3d 660 (5th Cir.2004), abrogating Stogner v. Cent. Boat Rentals, Inc., 326 F.Supp.2d 754 (E.D.La.5/11/2004).
[7] Plaintiffs sought to exclude the testimonies of Reynaud and Martin.